IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-371 (LPS) |
| | ) | |
| TRUSTWAVE HOLDINGS, INC. and | ) | |
| SINGAPORE TELECOMMUNICATIONS | ) | |
| LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SINGAPORE TELECOMMUNICATIONS LIMITED'S
OPENING BRIEF IN SUPPORT OF ITS RENEWED MOTION TO DISMISS
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

OF COUNSEL:

John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

*Attorneys for Defendant
Singapore Telecommunications Limited*

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

September 16, 2020

TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE
        PROCEEDINGS ...................................................................................................1

II.     SUMMARY OF ARGUMENT ...........................................................................1

III.    STATEMENT OF FACTS ..................................................................................2

        a.      Finjan's Allegations related to Personal Jurisdiction over Singtel ........................2

        b.      Singtel's Has No Meaningful Contacts with the State of Delaware ......................3

        c.      Singtel is Not Bound by the Forum Selection Clause in the 2012
                Finjan-Trustwave Agreement ...................................................................6

IV.     ARGUMENT ......................................................................................................6

        a.      The Legal Framework ...............................................................................6

        b.      Singtel's Conduct Does Not Give Rise to Personal Jurisdiction ...........................8

        c.      Singtel's Subsidiaries Conduct Should Not Be Imputed on To Singtel ...............10

        d.      The forum-selection clause in the License Agreement between
                Trustwave and Finjan does not establish jurisdiction over Singtel......................18

V.      CONCLUSION..................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACE & Co. v. Balfour Beatty PLC*,
  148 F. Supp. 2d 418 (D. Del. 2001) ...............................................................13

*Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*,
  78 F. Supp. 3d 572 (D. Del. 2015), aff'd, 817 F.3d 755 (Fed. Cir. 2016) .......................15

*Applied Biosystems Inc. v. Cruachem, Ltd.*,
  772 F.Supp. 1458 (D. Del.1991)...........................................................12, 13, 18

*Aviation W. Charters, LLC v. Freer*,
  2015 WL 5138285 (Del. Super. Ct. July 2, 2015) ..........................................19

*Belden Techs., Inc. v. LS Corp.*,
  829 F. Supp. 2d 260 (D. Del. 2010)....................................................................10

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)..............................................................................7

*Boone v. Oy Partek Ab*,
  724 A.2d 1150 (Del.Super.1997), aff'd, 707 A.2d 765 (Del.1998) ...................8

*Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*,
  2018 U.S. Dist. LEXIS 179154 (D. Del. 2018) ...............................................17

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ...........................................................................................20

*C.R. Bard, Inc. v. Guidant Corp.*,
  997 F. Supp. 556 (D. Del. 1998) .........................................................................8

*Daimler v. Bauman*,
  571 U.S. 117 (2014)............................................................................................12

*Eastman Chem. Co. v. AlphaPet Inc.*,
  2011 WL 6004079 (D. Del. 2011) ....................................................................19

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
  335 F. Supp. 3d 657 (D. Del. 2018) ..................................................................13

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Interm.*,
  269 F.3d 187 (3d Cir. 2001) ..............................................................................19

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010).........................................................................................7

*Fisher v. Teva PFC SRL*,
    212 F. App'x 72 (3d Cir. 2006) .................................................................................13

*Forest Laboratories, Inc., v. Cobalt Laboratories, Inc.,*
    C.A. No. 08–00021–GMS–LPS, 2009 WL 605745 (D. Del. Mar. 9, 2009),
    adopted by 2009 WL 2753427 (D .Del. Aug. 27, 2009) ...................................................12

*Graphics Props. Holdings, Inc. v. ASUS Comput. Int'l*,
    70 F.Supp.3d 654 (D. Del. 2014)..........................................................................10, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)............................................................................................9, 12

*Koninklijke KPN N.V. v. Kyocera Corporation,*
    C.A. No. 17–00087–LPS, 2017 WL 6447873 (D. Del. 2017)....................................10, 11

*LaNuova D & B, S.p.A. v. Bowe Co., Inc.,*
    513 A.2d 764 (Del. 1986) ........................................................................................7

*Medical Solutions, Inc. v. C Change Surgical LLC*,
    541 F.3d 1136 (Fed. Cir. 2008).................................................................................7

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    443 F. Supp. 2d 636 (D. Del. 2006) .........................................................................14

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
    263 F. Supp. 3d 498 (D. Del. 2017)...............................................................11, 15, 16

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001) ..................................................................................17

*Polar Electro Oy v. Suunto Oy*,
    829 F.3d 1343 (Fed. Cir. 2016).................................................................................11

*Power Integrations, Inc. v. BCD Semiconductor,*
    54 7 F. Supp. 2d 365 (D. Del. 2008).............................................................................8

*Round Rock Research LLC v. ASUSTeK Computer Inc.*,
    967 F.Supp.2d 969 (D. Del. 2013).........................................................................10, 13

iii

*Truinject Corp. v. Nestle Skin Health, S.A.*,
  2019 WL 6828984 (D. Del. 2019), *report and recommendation
  adopted by* 2020 WL 1270916 (D. Del. Mar. 17, 2020) ...................................................19

*Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
  332 F.3d 188 (3d Cir. 2003) ................................................................................................17

*Univ. of Mass. Med. Sch. v. l'Oréal S.A.*,
  2018 WL 5919745 (D. Del. 2018) .......................................................................................16

*Walden v. Fiore*,
  571 U.S. 277 (2014)...............................................................................................................9

## Secondary Sources

Brilmayer et al., A General Look at General Jurisdiction,
  66 Texas L.Rev. 721 (1988) ..................................................................................................9

## Statutes

10 Del. C. § 3104(c)............................................................................................................7, 8, 13

## Rules

Rule 12(b)(2)....................................................................................................................................1

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On March 16, 2020, Finjan, Inc. ("Finjan") filed a Complaint against Trustwave Holdings, Inc. ("Trustwave") and Singapore Telecommunications Limited ("Singtel"), alleging infringement of U.S. Patent No. 8,141,154 ("the '154 Patent") based on Trustwave's sales of its Secure Web Gateway and Trustwave Secure Email Gateway products ("Accused Products").  On June 5, 2020, Trustwave filed its Answer and Counterclaim to Finjan's Complaint.  D.I. 11.  On August 5, 2020 Singtel filed a Motion to Dismiss for Lack of Personal Jurisdiction.  D.I. 21-24. Instead of responding to Singtel's Motion to Dismiss, Finjan elected to file a First Amended Complaint ("FAC") against Trustwave and Singtel on August 19, 2020.  D.I. 28.  The First Amended Complaint adds a second claim against Singtel for breach of contract.  *Id.* at ¶¶ 101-115.  Because this Court lacks personal jurisdiction over both the patent infringement and breach of contract claims, Singtel once moves to dismiss Finjan's amended complaint under Fed. R. Civ. P. 12(b)(2).

## II.     SUMMARY OF ARGUMENT

This Court lacks personal jurisdiction over Singtel.  Singtel is a foreign telecommunications company organized and based in the Republic of Singapore.  Singtel has no offices or employees located in the United States.  Singtel has not sold the Accused Products in the United States and Singtel has no role in the design, manufacture, marketing, pricing, or sale of the Accused Products sold by Trustwave in the United States.  Singtel does not have daily operational control over Trustwave, and all corporate formalities are followed between Singtel and Trustwave.  Likewise, at no time were Trustwave or its employees authorized to act as Singtel's agent.  Moreover, Singtel is not bound by a forum selection clause included in an agreement between Trustwave and Finjan negotiated and executed in 2012, three years before

Singtel acquired Trustwave.  In short, Singtel has no meaningful contacts with the State of Delaware under any theory that could warrant finding specific or general jurisdiction over Singtel.

### III.  STATEMENT OF FACTS

####   a.  Finjan's Allegations related to Personal Jurisdiction over Singtel

Finjan's FAC alleges jurisdiction over Singtel under multiple theories.  FAC at ¶¶ 13-17. Aside from conclusory recitations of legal standards, the only substance in these paragraphs is that (1) Singtel "purposefully availed itself of the laws of Delaware by acquiring Trustwave, a Delaware corporation" (FAC at ¶ 14); (2) Singtel integrated "its cybersecurity capabilities, technologies, and resources under the Trustwave brand, a wholly owned Delaware subsidiary that sells the products at issue in this litigation, including in this District" (FAC at ¶ 14); (3) Singtel has subsidiaries that are registered in the State of Delaware (FAC at ¶ 15); (4) Singtel "places its products into the stream of U.S. commerce through its subsidiaries (including Trustwave, a wholly owned Delaware subsidiary) that are incorporated in this District, including the products at issue in this case" (FAC at ¶ 16); (5) "Trustwave, Singtel's wholly owned subsidiary, acted as Singtel's agent in negotiating about amending the Contract and both Singtel's and Trustwave's obligations under the Contract" (FAC at ¶ 17); and (6) Singtel expressly consented to this jurisdiction when it acquired Trustwave in 2015 based on a forum selection clause in an agreement Trustwave and Finjan executed in 2012 (FAC at ¶ 13).  All of these allegations are misplaced and fail to establish jurisdiction over Singtel.

Finjan identifies no factual basis for its material allegations which, as outlined below, are inaccurate.  For example, a cursory review of publicly available records available at the Delaware Division of Corporations shows that some of the Singtel subsidiaries identified by

Finjan ceased to exist over a decade ago.[1]   *See* Exs. A-H to the Declaration of Jared A. Brandyberry.   As another example, Finjan's FAC repeatedly alleges that Trustwave's prior General Counsel, Annabel Lewis, became a Singtel employee as Singtel General Counsel and served as Singtel's agent in negotiations with Finjan in September 2015 both after and even before Singtel acquired Trustwave.   FAC at ¶¶ 40-50.   Finjan's support for this allegation is Ms. Lewis's LinkedIn page that includes a work history entry from September 2015 to November 2018 titled "SVP, General Counsel & Corporate Secretary at Trustwave, **a Singtel Company**." FAC at ¶ 48 (emphasis added) and Ex. O.   In other words, Finjan's agency argument is based on the notion that reference to an acquiring company on a subsidiary's employee's LinkedIn page means that that the employee is somehow the acquiring company's employee and agent.   Ms. Lewis was never a Singtel employee and never served as Singtel's agent before or after Singtel's acquisition of Trustwave.   September 16, 2020 Declaration of Quah Kung Yang ("Sep. 16th Yang Decl.") at ¶¶ 21-22.[2]

### b.   Singtel's Has No Meaningful Contacts with the State of Delaware

Singtel is a telecommunications company organized and located in Singapore.   July 30, 2020 Declaration of Quah Kung Yang ("July 30th Yang Decl.") at ¶ 5.   Singtel has no offices or employees in the United States.   *Id.* at ¶¶ 6-7.   Singtel acquired Trustwave in 2015.   D.I. 1 at Exhibit F.   The Accused Products are Trustwave products that were developed by Trustwave and its predecessors (one of which is actually Finjan).   *See generally* D.I. 11 and 18.   Singtel has not sold the Accused Products in the State of Delaware or anywhere in the United States.   July 30th Yang Decl. at ¶ 8.   Furthermore, Singtel has had no role in the design, manufacture, marketing,

---

[1]  Singtel noted many of these factual inaccuracies in its prior motion to dismiss (D.I. 21-24) and provided declarations and evidence to establish the factual errors in Finjan's original Complaint. Nevertheless, Finjan continues to assert them.

[2]  Singtel will submit a signed version of Mr. Yang's declaration in due course.

pricing, or sale of the Accused Products sold by Trustwave in the State of Delaware or elsewhere in the United States. *Id*. at ¶ 9. Although Singtel and Trustwave entered into a standard, arms-length reseller agreement under which Singtel may resell Trustwave cybersecurity software and products to Singtel telecommunications customers, which predominantly reside in the Asian-Pacific market, Singtel has not sold the Accused Products under the reseller agreement to any customers in Delaware or elsewhere in the United States. *Id*. at ¶ 10.

After conducting a review of records, including billing records, the only contacts with Delaware that Singtel could identify are 12 Singtel customer accounts with billing addresses in Delaware. *Id*. at ¶ 11. All 12 of the customer accounts are for telecommunication services (e.g., mobile phone services) provided in Singapore, as Singtel does not provide any telecommunication services in Delaware. *Id*. The 12 customers merely provided a Delaware address designated by the customer or the customer's relative for the purpose of billing for telecommunication services provided in Singapore. *Id*. Again, Singtel never sold the Accused Products to these customer accounts in Delaware. *Id*.

The subsidiaries listed in paragraph 15 of Finjan's FAC either no longer exist, are investment holding companies, or are operating companies unrelated to cybersecurity services. *Id*. at ¶ 12. Each listed subsidiary is addressed below:

- Singtel USA, Inc. was a subsidiary of Singtel, but public records at the Delaware Division of Corporations show that it was dissolved over sixteen years ago on March 23, 2004. July 30th Yang Decl. at ¶ 12.a.; Brandyberry Decl. at Ex. A.

- Singtel Enterprise Security (US), Inc. is a subsidiary of Singtel, but is an investment holding company and is not an operating entity. July 30th Yang Decl. at ¶ 12.b.; Brandyberry Decl. at Ex. B.

- Singtel Communications LLC was a subsidiary of Singtel, but public records at the Delaware Division of Corporations show that its registration with the State of Delaware was cancelled over twelve years ago on February 15, 2008. July 30th Yang Decl. at ¶ 12.c.; Brandyberry Decl. at Ex. C.

- Singtel Innov8 Ventures LLC, a subsidiary of Singtel, is a venture capital fund with offices in California.  July 30th Yang Decl. at ¶ 12.d.; Brandyberry Decl. at Ex. D.

- Singtel Mobile Marketing, Inc. was a subsidiary of Singtel, but public records at the Delaware Division of Corporations show that it merged into another entity on June 23, 2016. Singtel Mobile Marketing, Inc. was an investment holding company and was not an operating entity.  July 30th Yang Decl. at ¶ 12.e.; Brandyberry Decl. at Ex. E.

- Amobee Inc. is a subsidiary of Singtel that provides internet advertising services and is headquartered in California.  July 30th Yang Decl. at ¶ 12.f.; Brandyberry Decl. at Ex. F.

- It does not appear that Lucid Media Networks, Inc. has any affiliation with Singtel. Singtel's subsidiary Amobee Inc. acquired assets from Videology out of bankruptcy in 2018.  Videology may have previously acquired Lucid Media Networks, Inc. in 2012 (https://www.prnewswire.com/news-releases/videology-acquires-lucidmedia-a-digital-management-platform-for-display-and-rich-media-advertising-across-mobile-and-online-172343841.html), but again it does not appear that Singtel has any affiliation with an entity bearing the name Lucid Media Networks, Inc.  Public records at the Delaware Division of Corporations show that nothing has been filed related to Lucid Media Networks, Inc. since April 2014.  July 30th Yang Decl. at ¶ 12.g.; Brandyberry Decl. at Ex. G.

- Pixable Inc., a social media and news content company, was acquired by Singtel in 2012, but ceased operations in 2015, and public records at the Delaware Division of Corporations show that it was dissolved on June 8, 2016.  July 30th Yang Decl. at ¶ 12.h.; Brandyberry Decl. at Ex. H.

Finally, Finjan's FAC appears to make alter ego and agency arguments that attempt to disregard corporate formalities between Singtel and Trustwave.  but all corporate formalities between Singtel and Trustwave are observed.  Although Singtel senior management has representation on Trustwave's board of directors, there is no overlap between Singtel's and Trustwave's boards of directors; moreover, Singtel has no daily operation control over Trustwave. Sept. 16th Yang Decl. at ¶¶ 7-16.  By example, Singtel and Trustwave have separate departments for all material functions and cannot access each other's computer systems.  *Id*. at ¶ 14.  Since the acquisition, Singtel has insured that Trustwave is adequately capitalized through intercompany loans that are negotiated at arm's length.  *Id*. at ¶ 17.  Furthermore, Singtel has not extracted a dime from Trustwave since the acquisition.  *Id*. at ¶ 18.

### c.   Singtel is Not Bound by the Forum Selection Clause in the 2012 Finjan-Trustwave Agreement

In 2012, Finjan and Trustwave entered into an Amended and Restated Patent License Agreement (the "2012 Agreement") as a result of Trustwave's acquisition of M86.  FAC at Ex. B. The 2012 Agreement contains a forum selection clause in Section 6.4.1 for the "parties hereto." *Id*.  In September 2015, Singtel acquired Trustwave.  Singtel and Finjan did not execute any agreement upon Singtel's acquisition of Trustwave.  Furthermore, Singtel and Trustwave did not execute an amendment or supplement of any kind to the 2012 Agreement as a result of Singtel's acquisition of Trustwave in 2015.   Likewise, Trustwave did not grant Singtel a sublicense under the 2012 Agreement.  Sept. 16th Yang Decl. at ¶ 16.

Finjan's and Trustwave's dispute over the 2012 Agreement is the subject of litigation originally filed in Delaware Superior Court (Case No. N18C-04-006 WCC CCLD) in April 2018 that was recently (and improperly) removed to this Court (C.A. No. 20-372) after nearly two years of litigation in Superior Court.  Finjan's improper removal is at issue in Trustwave's fully briefed Motion to Remand.  C.A. No. 20-372, D.I. 9-10, 14, 16, 31, 32, and 35.  Of note, between the time Finjan filed the Superior Court action in April 2018 and when Finjan improperly removed that action to this Court in March 2020, or thereafter, Finjan never sought leave to add Singtel as a party.  It appears that Finjan is seeking to add its purported breach of contract claim against Singtel in this action as an attempt to create personal jurisdiction over Singtel that does not exist.

### IV.   ARGUMENT

### a.   The Legal Framework

To establish that this Court has personal jurisdiction over Singtel in this patent infringement action, Finjan must demonstrate that: (1) jurisdiction exists under Delaware's long-

arm statute and (2) the assertion of personal jurisdiction is consistent with the limitations of the Due Process Clause of the U.S. Constitution. *See, e.g., Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139, (Fed. Cir. 2008). Delaware's long-arm statute contains the following relevant sections for assertion of personal jurisdiction over nonresidents:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > (2) Contracts to supply services or things in this State;
> >
> > (3) Causes tortious injury in the State by an act or omission in this State;
> >
> > (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

10 Del. C. § 3104(c). Given the breadth of Delaware's long-arm statute, Courts interpret Section 3104(c) to confer personal jurisdiction to the maximum extent possible under the Due Process Clause. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). Subsections c(1), c(2) and c(3) of the Delaware long-arm statute are specific jurisdiction provisions that require a nexus between described conduct and Finjan's claim (e.g., that the alleged "tortious injury" under c(3) was committed by Singtel in Delaware), while subsection c(4) is a general jurisdiction provision that does not require that the Finjan's claim arises out of Singtel's contact with Delaware. *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 n.10 (Fed. Cir. 1994) ("Specific jurisdiction refers to the situation in which the cause of action arises out of or relates to the defendant's contacts with the forum .... It contrasts with general jurisdiction, in

which the defendant's contacts have no necessary relationship to the cause of action.") (internal citations and quotation marks omitted); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del.Super.1997), aff'd, 707 A.2d 765 (Del.1998) ("General jurisdiction is at issue when the plaintiff's claims are unconnected with the nonresidents' activities. In this instance, jurisdiction is based on the relationship between the forum and one of the parties; the forum's connection with the controversy is immaterial.") (internal citations omitted).

Finally, upon challenge, the plaintiff bears the burden of showing the basis for jurisdiction. *See Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365, 369 (D. Del. 2008).

### b. Singtel's Conduct Does Not Give Rise to Personal Jurisdiction

It is unclear whether Finjan's complaint alleges that Singtel's conduct gives this Court specific or general jurisdiction over it. If Finjan is alleging specific jurisdiction based on Singtel's conduct, then Finjan must show that its cause of action—i.e., Singtel's alleged infringing sales or inducement of customers to use the Accused Products—occurred in Delaware. But Singtel has not sold the Accused Products in Delaware or anywhere else in the United States. July 30th Yang Decl. at ¶ 8. Thus, there is no specific jurisdiction over Singtel.

If Finjan is alleging general jurisdiction, then it must show that Singtel "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." 10 Del. C. § 3104(c)(4). But Singtel does not do or solicit business in Delaware and does not provide any services or products consumed in Delaware. *Id*. at ¶ 11. Singtel's records show 12 telecommunications customers with billing addresses in Delaware, but the services provided

to these customers are in Singapore and not in Delaware.  *Id.*  But all Singtel does in this regard is send invoices to an address designated by the customer.

When addressing the limits of general jurisdiction under the Due Process Clause, the Supreme Court has warned against finding that such limited contacts with residents constitute the requisite contact with the forum state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially **at home** in the forum State.") (emphasis added); *id.* at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. See Brilmayer 728 (identifying domicile, place of incorporation, and principal place of business as "paradig[m]" bases for the exercise of general jurisdiction).") (citing Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L.Rev. 721 (1988)); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, **not the defendant's contacts with persons who reside there**.") (emphasis added); *id.* at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").  Here, Singtel's only contact is with these 12 customers who happen to have billing addresses in Delaware.  Singtel's contacts are not with the State of Delaware at large.  Furthermore, Singtel is not providing services in the state and is not directing business activities into the state.  This *de minimis* contact between Singtel and the State of Delaware does not constitute the "persistent course of conduct" needed to exercise general jurisdiction.  In other words, as in *Goodyear*, Singtel's "attenuated connections to the State… fall far short of the 'the continuous and

systematic general business contacts' necessary to empower [Delaware] to entertain suit against them on claims unrelated to anything that connects them to the State."  564 U.S. at 929.

Therefore, based on Singtel's conduct alone, there is no personal jurisdiction over it in Delaware.

### c. Singtel's Subsidiaries' Conduct Should Not Be Imputed To Singtel

Finjan's personal jurisdiction allegations appear to rely on an argument that Trustwave's or another U.S.-based subsidiary's actions in Delaware should be attributed to Singtel in disregard of corporate structures based on a dual jurisdiction, alter ego, or agency theory.

#### i. There is no Dual Jurisdiction over Singtel

First, Finjan's Complaint seemingly seeks to impute to Singtel (i.e., the foreign parent) the actions of its United States subsidiaries under the dual jurisdiction/stream of commerce theory.  "[T]he dual jurisdiction concept arises from at least partial satisfaction of subsections (1) and (4) of the Delaware long arm statute . . . . Dual jurisdiction may be established when a manufacturer has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts."  *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) (internal quotations omitted).  Under this dual jurisdiction theory, Delaware courts may exercise personal jurisdiction over a foreign defendant if the Plaintiff shows that: (1) the foreign defendant intended to serve the Delaware market; (2) the foreign defendant's intent resulted in the introduction of the product into the market; and (3) plaintiff's cause of action arises from injuries caused by that product.[3]  *Graphics Props. Holdings, Inc. v. ASUS Comput. Int'l*, 70 F.Supp.3d 654, 662 (D. Del. 2014).  To show the requisite intent, Finjan must demonstrate

---

[3]  Some decisions from this Court have rejected this more expansive stream of commerce/dual jurisdiction theory (*see, e.g., Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F.Supp.2d 969, 975-977 (D. Del. 2013)), while others have allowed the Court to use the theory to find jurisdiction over foreign defendants (*see, e.g., Koninklijke KPN N.V. v. Kyocera Corporation*, C.A. No. 17-087–LPS, 2017 WL 6447873, *3-*4 (D. Del. 2017)).

that Singtel had a role in the design, manufacture, marketing, pricing, or sale of the Accused Products sold in Delaware.  *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 504 (D. Del. 2017).

In cases finding jurisdiction over foreign defendants under this theory, Courts have pointed to the foreign defendant's direct involvement with the accused products.  *See*, *e.g.*, *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016) (defendant shipped numerous accused products to Delaware retailers expecting that the products would be sold in Delaware and finding the defendant's actions were "purposefully directed to Delaware, indicating an intent and purpose to serve not only the U.S. market generally, but also the Delaware market specifically"); *Koninklijke*, 2017 WL 6447873, *3-*4 (finding that the foreign defendant specifically "develops, manufactures and sells mobile phones such as smartphones ... mainly for telecommunications carriers [such as Sprint Corporation, Verizon Communications Inc., T–Mobile US, Inc. and AT&T Inc.] in Japan and the U.S."); *Graphics Props. Holdings*, 70 F.Supp.3d at 658 and 662 (finding jurisdiction over Taiwanese defendant that designed and manufactured the accused product abroad because it "target[ed] the United States market by selling to [its U.S. subsidiary], which then sells the accused products to resellers for distribution across the United States" and the Taiwanese defendant "aware of and actively utilize these reseller outlets to sell the accused devices" in the State of Delaware").  No such circumstances exist here to warrant finding jurisdiction over Singtel.

Here, Singtel had no role in the design, manufacture, marketing, pricing, or sale of the Accused Products sold by Trustwave in Delaware or elsewhere in the United States of America. July 30th Yang Decl. at ¶ 9.  The Accused Products are cybersecurity software products that existed long before Singtel acquired Trustwave in 2015.  *See generally* D.I. 11 and 18.  Finjan

has no evidence that Singtel played any role in directing the Accused Products to Delaware or even to the United States market.[4]   Therefore, even under the dual jurisdiction theory, this Court does not have personal jurisdiction over Singtel.

Likewise, the existence of Singtel subsidiaries organized in Delaware does not constitute a "persistent course of conduct" with Delaware to warrant the exercise of general jurisdiction. *See, e.g., Applied Biosystems Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1464 (D.Del.1991) (when "there is no evidence to support piercing the corporate veil, [a subsidiary's] status as a Delaware corporation may not be imputed to [a parent]."); *Forest Laboratories, Inc., v. Cobalt Laboratories, Inc.*, C.A. No. 08–021–GMS–LPS, 2009 WL 605745, at *7 (D.Del. Mar. 9, 2009), adopted by 2009 WL 2753427 (D.Del. Aug. 27, 2009) ("incorporating [a subsidiary] does not satisfy subsection (c)(4)"); *see also Daimler v. Bauman*, 571 U.S. 117, 136 (2014) (rejecting "[t]he Ninth Circuit's agency theory" because it "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*."). Here, Finjan's FAC makes no allegations related to piercing the corporate veil and as examined below any alter ego or agency argument is misplaced.   Therefore, the existence of subsidiaries, many of which ceased to exist over a decade ago, organized in Delaware does not give this Court jurisdiction over Singtel under a general jurisdiction theory.

### ii.      Trustwave Is Not The Alter Ego or Agent of Singtel.

As an alternative basis for jurisdiction over Singtel, Finjan alleges that Singtel has "integrated" its subsidiaries' businesses, including Trustwave's, such that they together "comprise one entity."  *See, e.g.*, FAC at ¶¶ 61-65.  Singtel's theory is based in large part on

---

[4]  Given that Singtel has not sold the Accused Products in the United States or committed another act under 35 U.S.C. § 271(a)-(c) that could give rise to liability, it is unclear why Finjan filed or seeks to continue this action against Singtel.

general statements in Singtel's annual reports.  *Id.*  But whether a parent corporation is subject to personal jurisdiction based on its subsidiary's conduct depends on "the degree of control which the parent exercises over the subsidiary," *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp.1458, 1463 (D. Del. 1991), namely where "the subsidiary is the parent's agent or alter ego so that the independence of the separate corporate entities [is] disregarded." *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006) (quotation marks omitted).  "The agency theory requires not only that the precise conduct shown to be instigated by the parent be attributable to the parent, but also that such conduct satisfy § 3104(c)(1); *i.e.*, that the jurisdictional conduct take place in Delaware." *ACE & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 424–25 (D. Del. 2001).  Merely pleading facts consistent with a parent-subsidiary relationship "do[es] not make [Singtel] the 'agent' of [Trustwave] for purposes of jurisdictional analysis." *Round Rock*, 967 F. Supp. 2d at 978 (rejecting exercising personal jurisdiction over a Taiwanese corporation).

Singtel does not exercise control over Trustwave so as to subject Singtel to specific personal jurisdiction based on Trustwave's activities. Trustwave, a data security services company is a completely different business operation from Singtel, Singapore's largest public utility company. Although Trustwave is a wholly-owned subsidiary of Singtel, they are separate companies, reflected by their observance of corporate formalities, including separate executive committees, separate boards of directors, and separate books and accounting.  *See generally* Sept. 16th Yang Decl.  *See E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 679-80 (D. Del. 2018) (no personal jurisdiction over parent company where parent and subsidiary observed corporate formalities).

Finjan suggests that Singtel exercises a great degree of control over Trustwave.  Not so.

First, Finjan alleges that Singtel and Trustwave "comprise one entity" because Singtel owns all or most of the stock of Trustwave.  FAC at ¶ 70(i).  It is well established, however, that mere ownership is not sufficient to confer personal jurisdiction.  *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 645 (D. Del. 2006) (noting that "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent" where none of the claims at issue arose from the act of incorporation itself).

Second, Finjan alleges that Trustwave and Singtel are essentially the same entity because they share two common officers:  Annabel Lewis (Trustwave's former general counsel) and Robert J. McCullen (Trustwave's former CEO).  FAC at ¶¶ 48, 49.  As discussed above, Ms. Lewis has never been employed by Singtel and has not been employed by Trustwave since November 2018.  Sept. 16th Yang Decl. at ¶ 21.  Finjan also alleges that Ms. Lewis "act[ed] as Finjan's main point of contact for negotiations of an amended Contract."  FAC ¶ 70(iii); *see also id.* ¶ 70(ix), (xiii).  For support, Finjan cites a July 16, 2015 email that says she "spoke with Singtel again . . . and they will come back to us shortly."  FAC ¶ 41; *see also id.* ¶¶ 50, 52.  But Ms. Lewis's email does not show that she was negotiating on behalf of Singtel.  In fact, in July 2015, Trustwave and Singtel were still conducting diligence with respect to the prospective acquisition of Trustwave by Singtel, which did not occur until the beginning of September 2015.  Ms. Lewis' correspondence with Finjan shows that she was conducting necessary diligence in her role as Trustwave General Counsel.  Even more, the statement indicates that Ms. Lewis did not have authority to act on Singtel's behalf and was acting solely on behalf of Trustwave.  As the General Counsel of Trustwave, Ms. Lewis directly negotiated with Finjan on Trustwave's behalf, but she did not negotiate on behalf of Singtel nor did she or any other Trustwave

employee have authority to do so.  Sept. 16th Yang Decl. at ¶ 22.  In fact, there was no contract amendment, and Singtel did not even acquire Trustwave until after the purported negotiations took place.  FAC at ¶ 45.

Finjan's allegations with respect to Mr. McCullen are based on two Singtel Annual Reports that list Mr. McCullen, "Chief Executive Officer and President, Trustwave," as one of nine members of senior management in 2016 and one of seven members in 2017.  FAC at ¶ 49.  But Mr. McCullen has not been an officer of Trustwave since 2018.  This "minor overlap" is insufficient to subject Singtel to personal jurisdiction. *See, e.g., Nespresso*, 263 F.Supp.3d at 505 (no personal jurisdiction where two individuals from subsidiary shared leadership roles at the parent company); *E.I. du Pont*, 335 F. Supp. 3d at 677-78 (no personal jurisdiction where two directors on subsidiary's board, including the subsidiary's president, were also on the parent's executive management team).

Third, Finjan includes a laundry list of repetitive allegations regarding overlapping business functions between "Singtel and its subsidiaries, including Trustwave."  *See* FAC at ¶ 70(ii), (iv)-(xiv).  Singtel's participation in its other subsidiaries' businesses has no relevance to whether Singtel exercises sufficient control over Trustwave and specifically with respect to the issues in dispute.  *See, e.g.*, *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572, 597–98 (D. Del. 2015), aff'd, 817 F.3d 755 (Fed. Cir. 2016) ("When applying the agency theory, a court should focus its inquiry on the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement to the plaintiff's claim.").  Regardless, the allegations either are incorrect, are not connected to Delaware or Finjan's claims, or do not establish Singtel's control over Trustwave.

Finjan alleges that Singtel and its subsidiaries share common procedures and controls for

reporting financial data and statements. FAC at ¶¶ 62, 70(ii), (xiv).  Singtel, a Singaporean public company, follows financial reporting (including annual reports) rules and regulations that conform with the Singapore Financial Reporting Standards (International) (SFRS(I)) that require consolidated reporting of financial performance of Singtel's and its subsidiaries, including Trustwave.  Sept. 16th Yang Decl. at ¶ 23.  Under Finjan's theory, Singtel would be subject to personal jurisdiction anywhere it has a subsidiary and is obligated to file consolidated reporting. That is not the law.  *See Univ. of Mass. Med. Sch. v. l'Oréal S.A.*, 2018 WL 5919745 at *10-12 (D. Del. Nov. 13, 2018) (declining to exercise personal jurisdiction over l'Oréal S.A. based on subsidiary activities, even though it jointly disclosed financial results with its subsidiaries in a consolidated report); Nespresso, 263 F. Supp. at 505–506 (finding annual review report attributing a subsidiary's success to the parent company insufficient for personal jurisdiction over the parent).[5]

Based on Singtel's Annual Reports, Finjan alleges that Singtel and its subsidiaries share an integrated sales system, security technology (including Finjan's alleged patented technology), trademarks, and employees and supervisory personnel.  FAC at ¶¶ 61, 65, and 70 (iv)-(viii), (x), and (xii).  Not so.  Singtel's Annual Reports make general statements about Trustwave and its products, FAC at ¶¶ 65-66, as well as other Singtel subsidiaries, which demonstrate an ownership relationship between Singtel and Trustwave, but  not one entity's control over the other.   In reality, Singtel and Trustwave have, *inter alia,* separate legal, human resources, IT, marketing, finance, accounting/audit, and procurement departments.  Sept. 16th Yang Decl. at

---

[5]  In addition, Finjan alleges that Singtel "retains significant financial benefits from its total control over its subsidiaries."  FAC at ¶ 71.  To the extent this allegation is meant to demonstrate control, it also fails.  Since acquiring a controlling interest in Trustwave in 2015, Singtel has not withdrawn any funds from Trustwave.  Sept. 16th Yang Decl. at ¶ 18.  Moreover, Trustwave's revenue represents a very small fraction of Singtel's total revenue.  For its fiscal year 2020, Singtel's total revenue was $11.640B (revenue figure in USD as of the March 31, 2020 SGD to USD conversion rate, *see* https://www.exchange-rates.org/Rate/SGD/USD/3-31-2020).  FAC at Exhibit H.

¶¶ 13-16.  Singtel does not design or develop its own cybersecurity products, but it does resell third-party cybersecurity products, including Trustwave's.  *Id.* at ¶¶ 19-20.  Singtel is a reseller of third-party cybersecurity products, including Trustwave's, in connection with its provision of telecommunications services and products in the Asian-Pacific market.  *Id.*  Finjan's allegations do not show that Singtel controlled Trustwave's day-to-day activities or manufacture of its products.[6]  *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (finding no agency when subsidiary "makes its own decisions about day-to-day activities" even when subsidiary "used [parent's] name on its cartons and in its brochures").

Finally, any claim by Finjan that Singtel is subject to personal jurisdiction because Trustwave is the alter ego of Singtel fails.  The burden to establish the alter ego relationship "is notoriously difficult for plaintiffs to meet."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).  A legally distinct entity can be the alter ego of another entity only where (1) a court finds that there is a fundamental lack of corporate separateness between the entities; and (2) the situation presents an element of either fraud, injustice, or unfairness in the use of the corporate form.  *See Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003); *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, No. 17-374-LPS, 2018 U.S. Dist. LEXIS 179154, at *9 (D. Del. Oct. 28, 2018) ("The presumption of corporate separateness may only be overcome by a showing of fraud, injustice, or unfairness.").   In determining whether an alter ego relationship exists, the Court considers factors including the "extent of overlap of officers and directors, methods of financing, the

---

[6]  Finjan alleges that Singtel and its subsidiaries "distribute Trustwave branded products and services in set geographical regions," FAC at ¶ 70(xi), but the sole fact alleged in support is that Optus, an Australian subsidiary of Singtel, markets itself as Trustwave in Australia.  FAC at ¶ 68.  Not only do these allegations involve Trustwave's sister company—not Singtel—they do not relate to Delaware or this litigation.  Likewise, Finjan points to a vice president of Optus had an interim position with Trustwave in between positions at Optus.  FAC at ¶ 67.  Finjan does not allege any overlapping employees or overlap between Singtel and Trustwave.

division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Applied Biosystems Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1464 (D. Del.1991).

Finjan comes nowhere close to meeting this standard.  As noted above, Singtel and Trustwave have separate boards of directors with no overlap.  Sept. 16th Yang Decl. at ¶ 8.  For a short period of time, Singtel and Trustwave had a single overlap in senior management (McCullen).  Trustwave and Singtel observe corporate formalities.  *Id*. at ¶ 7 and 10-11. Trustwave manages its own, separate day-to-day operations and has separate computer systems, bank accounts, and payroll systems from Singtel.  *Id*. at ¶¶ 12-16.  Singtel and Trustwave also have separate legal, human resources, IT, marketing, finance, accounting/audit, and procurement departments.  *Id*. at ¶¶ 13-15.  Finally, Trustwave is adequately capitalized, including with formal, reported loans issued by Singtel to Trustwave based on arm's length agreements; moreover, Singtel has not extracted a cent from Trustwave since the acquisition.  *Id*. at ¶¶ 17-18.

Any alter ego or agency arguments raised by Finjan fail along with all other theories for holding Singtel subject to this Court's jurisdiction.

### d.    The forum-selection clause in the License Agreement between Trustwave and Finjan does not establish jurisdiction over Singtel.

Finally, Finjan claims that this Court has personal jurisdiction over Singtel because Singtel purportedly became a party to the 2012 Agreement, which includes a consent to jurisdiction in Delaware, when it acquired Trustwave.  FAC at ¶ 13.  This conclusory allegation fails to establish that Singtel—a non-signatory to the 2012 Agreement—expressly consented to personal jurisdiction in Delaware.

Finjan relies on Section 2.5 of the 2012 Agreement, which states in relevant part: "In the event of an Acquisition of [Trustwave], all the provisions of this Agreement applicable to

[Trustwave] . . ., shall be deemed to apply to the Acquirer, and its respective Affiliates that are licensed hereunder . . . ."  Section 6.4 provides that "the parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court" in Delaware.  Section 2.5 does not specifically identify Singtel or state that Singtel will become a "party" to the Contract; moreover, the Contract can be "amended, supplemented or changed only by written agreement of the parties hereto."  FAC at Ex. A, Section 6.5.  Only "parties" to the Contract consented to jurisdiction by operation of Section 6.4.  Finjan provides no explanation why Singtel—a Singapore entity that acquired Trustwave three years after the Contract was executed and named nowhere in the 2012 Agreement—should be hauled into Delaware.

"[T]ypically only those parties that have actually signed the agreement-at-issue are bound by its forum selection clause."  *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 6004079, at *4 (D. Del. Nov. 4, 2011).  Although there are limited instances in which a non-signatory can be subject to a forum selection clause,[7] Finjan has not pled any here.  *See* FAC at ¶ 13.  Even if Finjan had pled that Singtel is bound by the forum selection clause as a non-party to the Contract, binding Singtel would violate due process because Singtel does not have "minimum contacts" with Delaware.  *See Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592-LPS-JLH, 2019 WL 6828984, at *11 (D. Del. Dec. 13, 2019), *report and recommendation adopted by* 2020 WL 1270916 (D. Del. Mar. 17, 2020).  In *Truinject*, the Court noted that where "the party has

---

[7]  This Court has declined to subject a non-signatory to a forum selection clause in similar circumstances.  *See, e.g.*, *Eastman*, 2011 WL 6004079, at *4 (declining to exercise jurisdiction over parent company based in Thailand where its subsidiaries entered into a contract with a forum-selection clause including "affiliates"); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Interm.*, 269 F.3d 187, 192, 196-97 (3d Cir. 2001) (declining to subject parent company to arbitration clause in contract entered into by its subsidiary based on third-party beneficiary theory where the contract stated the obligations therein applied to "the parties 'and their Affiliates . . .'"); *Aviation W. Charters, LLC v. Freer*, No. N14C-09-271 WCC CCLD, 2015 WL 5138285, at *5 (Del. Super. Ct. July 2, 2015) ("It makes sense that a signatory to an agreement . . . should generally be bound by a forum selection clause [there]in . . . However, the opposite is true here. Here, Plaintiff . . . is attempting . . . to bind a non-signatory" and "the Court find[s] such action generally inappropriate").

consented to a particular forum in a 'freely negotiated' agreement," then the minimum contacts analysis is not required.  *Id.*  However, where, like here, the non-signatory "is not even a party to the agreement" and did not "freely negotiate[]" the agreement, then the Court must undertake the due process minimum contacts analysis.  *Id.*  As addressed above, Singtel has no meaningful contacts with Delaware.

## V.     CONCLUSION

Singtel respectfully requests that the Court dismiss Finjan's Complaint against Singtel for lack of personal jurisdiction.[8]

---

[8]  Given that Singtel's motion to remand (D.I. 9) in C.A. No. 20-372 is pending, it does not appear that a motion to dismiss or alternatively stay Finjan's breach of contract claim against Singtel is ripe based on the *Colorado River* Doctrine.  Upon remand, to the extent required under Fed. R. Civ. P. 12(b), Singtel may seek leave to supplement this motion to seek dismissal or stay of Finjan's breach of contract claim against Singtel based, *inter alia,* on the *Colorado River* Doctrine.  The prior pending action in Delaware Superior Court (Case No. N18C-04-006 WCC CCLD) was filed in April 2018 and litigated for two years in Superior Court resulting in multiple rulings interpreting the 2012 Agreement under which Finjan seeks to sue Singtel in this action. Similar to Finjan's improper removal of its own filed state court action after two years of litigation, Finjan's addition of the breach of contract claim against Singtel in the FAC would appear to be yet another effort to avoid the rulings in the Superior Court that did not favor Finjan.  Singtel acknowledges that it could bring a motion based on improper claim-splitting since both this action and C.A. No. 20-372 currently pend in this Court, but, given this Court would preside over both actions, Trustwave believes a formal claim-splitting motion would be inefficient given the present posture.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

OF COUNSEL:

John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

September 16, 2020

*Attorneys for Defendant*
*Singapore Telecommunications Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 16, 2020, upon the following in the manner indicated:

Karen E. Keller, Esquire                                    *VIA ELECTRONIC MAIL*
Jeffrey T. Castellano, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Bijal Vakil, Esquire                                        *VIA ELECTRONIC MAIL*
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94307
*Attorneys for Plaintiff*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)