IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-371 (LPS) |
| | ) |
| TRUSTWAVE HOLDINGS, INC. and | ) **DEMAND FOR JURY TRIAL** |
| SINGAPORE TELECOMMUNICATIONS | ) |
| LIMITED | ) **PUBLIC VERSION** |
| | ) **Filed January 22, 2021** |
| Defendant. | ) |

## DEFENDANT TRUSTWAVE HOLDINGS, INC.'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF FINJAN, INC.'S RENEWED MOTION TO DISMISS AND TO STRIKE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

*Attorneys for Defendant*
*Trustwave Holdings, Inc.*

OF COUNSEL:

John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

January 15, 2021

## TABLE OF CONTENTS

Page

I. STATEMENT OF THE NATURE AND STAGE OF THE
PROCEEDINGS ...................................................................................1

II. SUMMARY OF ARGUMENT ............................................................1

III. ARGUMENT .......................................................................................4

    a. Trustwave's Affirmative Defenses and Counterclaim are
    Adequately Pleaded ......................................................................4

        i. Trustwave's Affirmative Defenses...............................6

        ii. Trustwave's Counterclaim ............................................8

    b. As Pleaded in the Complaint, the 2012 License Granted
    Trustwave Rights to the '154 Patent ...........................................9

        i. The '154 Patent and the Accused Products ..........................11

        ii. Finjan Sells Cybersecurity Product Line to M86 and
        Grants M86 the Original 2009 Patent License Agreement ................11

        iii. Trustwave's Acquisition of M86 and the Amended
        and Restated Patent License Agreement ...............................12

        iv. Extrinsic Evidence Supports Trustwave's Interpretation ..................18

IV. CONCLUSION....................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Align Tech., Inc. v. 3Shape A/S,*
    339 F. Supp. 3d 435 (D. Del. 2018) ......................................................................17

*AMP Inc. v. United States,*
    389 F.2d 448 (Ct. Cl. 1968) ................................................................................17

*Ampro Computers, Inc. v. LXE, LLC,*
    No. 13–1937–LPS, 2015 WL 5257153, at *3 (D. Del. September 9, 2015) .............................8

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).................................................. *passim*

*AT&T Corp. v. Lillis,*
    953 A.2d 241 (Del. 2008) .....................................................................................11

*Bayer Cropscience AG v. Dow Agrosciences LLC,*
    No. 10–1045-RMB/JS, 2011 WL 6934557 (D. Del. Dec.30, 2011) ..........................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)................................................... *passim*

*Cadence Pharm., Inc. v. Paddock Labs., Inc.,*
    No. 11–733–LPS, 2012 WL 4565013 (D. Del. Oct. 1, 2012) .......................................... *passim*

*Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,*
    478 F.2d 556 (3d Cir. 1973)...................................................................................14

*City Investing Co. Liquid. Tr. v. Cont'l Cas. Co.,*
    624 A.2d 1191 (Del. 1993) ....................................................................................10

*Choupak v. Rivkin,*
    No. 7000 VCL, 2015 WL 1589610 (Del. Ch. Apr. 6, 2015) .................................................10

*Cipla Ltd. v. Amgen Inc.,*
    386 F. Supp. 3d 386 (D. Del. May 2, 2019) ..................................................................4

*Crown Books Corp. v. Bookstop Inc.,*
    1990 WL 26166 (Del.Ch. Feb. 28, 1990) .....................................................................13

*Device Enhancement LLC. v. Amazon.com, Inc.,*
    189 F. Supp. 3d 392 (D. Del. May 17, 2016) ..................................................................9

*Energy Partners, Ltd. v. Stone Energy Corp.*,
   2006 WL 2947483 (Del. Ch. Oct. 11, 2006) .......................................................................15

*Endo Pharmaceuticals Inc. v. Actavis, Inc.*,
   746 F.3d 1371 (Fed. Cir. 2014)...........................................................................................17

*Finjan, Inc. v. Juniper Networks, Inc.*,
    387 F. Supp. 3d 1004 (N.D. Cal. May 29, 2019)...................................................................4

*Finjan, Inc. v. Juniper Networks, Inc.*,
    Case No. 2019-2405 (Fed. Cir. Oct. 9, 2020) .......................................................................4

*Floyd v. Black Swan Shipping Co., Ltd.*,
   No. 98–4207, 2001 WL 799848 (E.D. Pa. July 13, 2001).....................................................6

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir.2009)...................................................................................................8

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
   137 S. Ct. 1523 (2017)..........................................................................................................7

*In re EP Liquidation, LLC*,
   583 B.R. 304 (Bankr. D. Del. 2018) ...................................................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*,
   C.A. No. 13-1440-LPS, 2014 WL 4773954 (D. Del. Sept. 24, 2014)....................................5

*Intercept Pharm., Inc. v. Fiorucci*,
   277 F. Supp. 3d 678 (D. Del. September 28, 2017)..............................................................15

*Internet Media Corp. v. Hearst Newspapers, LLC*,
   No. 10–690–SLR, 2012 WL 3867165 (D. Del. Sept.6, 2012)...............................................5

*Kuhn Constr., Inc. v. Diamond State Port Corp.*,
   990 A.2d 393 (Del. 2010) ...................................................................................................15

*LCY Chemical Corp. v. Kraton Performance Polymers, Inc.*,
   No. 14-1279-GMS, 2015 WL 4486783 (D. Del. July 23, 2015)............................................9

*Lexington Luminance LLC v. TCL Multimedia Technology Holdings, Ltd.*,
   No. 16-11458, 2017 WL 3795769 (D. Mass. August 30, 2017)............................................7

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir.2000)..................................................................................................8

*Markow v. Synageva Biopharma Corp.*,
  No. N15C–06–152 WCC, 2016 WL 1613419 (Del. Super. Ct. Mar. 3, 2016).......................10

*McMullin v. Beran*,
  765 A.2d 910 (Del.2000) ...................................................................................................10

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ................................................................................................10

*Savor, Inc. v. FMR Corp.*,
   812 A.2d 894 (Del.2002) ..................................................................................................10

*Spindelfabrik Suessen–Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*,
  829 F.2d 1075 (Fed. Cir. 1987).........................................................................................17

*Sun Microsystems, Inc. v. Versata Entm't., Inc.*,
  630 F.Supp.2d 395 (D. Del. July 1, 2009))..........................................................................6

*Symbol Techs., Inc. v. Aruba Networks, Inc.*,
  609 F. Supp. 2d 353 (D. Del. March 30, 2009) ....................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................................................9

*Tenneco Auto. Operating Co. v. Visteon Corp.*,
  375 F.Supp.2d 375 (D. Del. June 28, 2005) .........................................................................6

*TransCore, LP v. Electronic Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009)..........................................................................................17

*Tyco Fire Products, LP v. Victaulic Co.*,
  777 F.Supp.2d 893 (E.D. Pa. April 12, 2011)......................................................................5

*Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.*,
  691 A.2d 609 (Del.1996) ...................................................................................................10

*VLIW Tech., LLC v. Hewlett–Packard Co.*,
  840 A.2d 606, 612 (Del. 2003) ......................................................................................8, 10

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
  103 F.3d 1571 (Fed. Cir. 1997)............................................................................................6

*Weed v. Ally Financial, Inc.*,
  No. 11–2808, 2012 WL 2469544 (E.D.Pa. June 28, 2012) ...............................................5, 6

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
    522 F.3d 315 (3d Cir.2008)...................................................................................8

*Winbond Elec. Corp. v. Int'l Trade Comm'n*,
    262 F.3d 1363 (Fed. Cir. 2001)............................................................................6

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
    868 F.Supp.2d 376 (D. Del. June 19, 2012) ........................................................5

## Trial Court Documents

*Finjan v. Sophos,*
    N.D. Cal. Case No. 3:14-cv-01197-WHO, Dkt. No. 398, September 21, 2016 ......................19

*Palo Alto Networks, Inc. v. Finjan, Inc.,*
    IPR2015-01979, Paper No. 6, December 29, 2015.................................................20

*Palo Alto Networks, Inc. v. Finjan, Inc.,*
    IPR2016-00151, Paper No. 8, February 17, 2016.................................................20

## Rules

Rule 8(a)...............................................................................................................4, 5

Rule 8(c)...........................................................................................................2, 5, 7

Rule 9 .....................................................................................................................5

Rule 12(b)(6).........................................................................................................10

Rule 12(f) ...........................................................................................................6, 7

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On March 16, 2020, Finjan filed a Complaint against Trustwave and Singtel alleging

infringement of U.S. Patent No. 8,141,154 ("the '154 Patent") based on Trustwave's sales of its

Secure Web Gateway and Trustwave Secure Email Gateway products ("Accused Products").

D.I. 1.  On June 5, 2020, Trustwave filed its Answer and Counterclaim.  D.I. 11.  On June 26,

2020, Finjan filed a combined motion to strike Trustwave's Eleventh, Twelfth, and Thirteenth

Affirmative Defenses and to dismiss Trustwave's Counterclaim for breach of contract.  D.I. 15.

That motion was fully briefed and previously requested oral argument on it.  D.I. 15, 18, 26, and

27.  Then, in response to Singtel's motion to dismiss for lack of personal jurisdiction, Finjan

filed a first amended complaint ("FAC").  D.I. 12-24 and 28.  In its FAC, Finjan asserted the

same allegations against Trustwave as in the original complaint.  *Cf.* D.I. 1 and 28.  On

September 16, 2020, Trustwave filed its answer and counterclaim to Finjan's FAC.  D.I. 36.  On

December 10, 2020, after multiple extensions of time, Finjan filed nearly the same motion to

dismiss and strike.  *Cf.* D.I. 15 and 48 ("Finjan Br.").

The challenged Affirmative Defenses and Counterclaim are as follows:

**Eleventh Affirmative Defense –** License based on the Finjan and Trustwave's 2012 Amended and Restated Patent License Agreement (the "2012 Agreement")(D.I. 36 at pp. 23-25);
**Twelfth Affirmative Defense –** Legal estoppel based on the 2012 Agreement (*Id.* at pp. 25-28);
**Thirteenth Affirmative Defense –** Patent exhaustion based on authorized sales of third-party products (*Id.* at p. 28); and,
**Counterclaim for Breach of Contract –** Finjan's breach of the 2012 Agreement based on its assertion of '154 patent in this action (*Id.* at pp. 29-38)

## II.     SUMMARY OF ARGUMENT

Finjan relies on page after page of purported factual background, often citing "facts"

found nowhere in the allegations of Trustwave's Answer and Counterclaim or even Finjan's own

Complaint, in an effort to contest the factual allegations in the challenged Affirmative Defenses and Counterclaims.  Finjan also dismisses Trustwave's allegations as wrong or irrelevant, repeatedly contesting a factual position that Trustwave has not asserted – that the '154 patent is listed in the appendix of the 2012 Agreement.  It is not, and Trustwave never argued it is.

Finjan's Motion should be denied for the following reasons:

1)  First, Finjan fails to state the correct standard for evaluating the sufficiency of an Affirmative Defense under Rule 8(c), which does not impose the heightened *Twombly*/*Iqbal* pleading requirements.  *Cadence Pharm., Inc. v. Paddock Labs., Inc.*, No. 11–733–LPS, 2012 WL 4565013, at *1 (D.Del. Oct. 1, 2012).  Under the proper standard, Trustwave's Affirmative Defenses are clearly sufficient, as they place Finjan on notice of the issues.  Even under the *Twombly*/*Iqbal* standard, Trustwave's detailed Affirmative Defenses set forth facially plausible defenses that survive heightened scrutiny.

2)  Finjan also fails to apply the proper standard under *Twombly*/*Iqbal* to challenge the sufficiency of Trustwave's Counterclaim for breach of contract.  Finjan seeks to place the burden on Trustwave to prove its Counterclaim based on its pleading alone.  Trustwave's Counterclaim sets forth facts in support of the elements of its claim—i.e., existence of a contract, breach, and damages—that demonstrate a plausible (in Trustwave's view, definitive) case that Finjan breached the  2012 Agreement.  Finjan disputes Trustwave's position that Trustwave is licensed and, further, that it breached the 2012 Agreement by filing this action alleging infringement of the '154 patent.  But, Finjan's position in this litigation is directly contrary to its own prior statements to Trustwave, as well as its statements in open court and before the Patent Office (as expressly alleged by Trustwave), where Finjan asserted under oath that Trustwave was licensed

2

to the '154 patent.  At best for Finjan, this raises a dispute that must be resolved after discovery on summary judgment or, if necessary, at trial.

3)  Finjan relies on a single fact—that the '154 patent is not listed as a Licensed Patent in the 2012 Agreement—to seek to have Trustwave's license and legal estoppel Affirmative Defenses stricken and Trustwave's breach of contract counterclaim dismissed.  Trustwave does not dispute that the '154 patent is not listed as a Licensed Patent in the 2012 Agreement.  But Trustwave alleges that, in the 2012 Agreement, Finjan and Trustwave defined a class of products— Integrated Licensed Products and Services—for which Finjan granted Trustwave an unqualified product license to fully exploit the products and business it purchased from M86.  This interpretation is supported by the parties' history, the original 2009 Finjan-M86 Patent License Agreement (the "2009 Agreement"), the language of the 2012 Agreement itself, and extrinsic evidence.  Likewise, Trustwave's legal estoppel Affirmative Defense alleges that Finjan's attempt to derogate rights granted under the 2012 Agreement is a breach that warrants awarding Trustwave an implied license to the '154 patent.

4)  Finally, Finjan does not even try to explain why it told a jury that Trustwave was licensed to the '154 patent or why it told the Patent Office multiple times that Trustwave was licensed to the '154 patent.  Either: (a) until recently, Finjan interpreted the 2012 Agreement just like Trustwave does and believed Trustwave's Integrated Licensed Products and Services were fully licensed (including as to the '154 patent) or (b) Finjan misled a jury to increase its potential damages against another accused infringer and misled the Patent Office in an attempt to preserve the validity of the '154 patent.  Either way, there is at least a material dispute as to the proper interpretation of the rights granted by Finjan to Trustwave for, *inter alia,* Integrated Licensed

Products and Services.  At best for Finjan, this dispute points to a potential ambiguity that requires evaluation of factual extrinsic evidence and also requires denial of Finjan's Motion.[12]

### III.    ARGUMENT[3]

#### a.  Trustwave's Affirmative Defenses and Counterclaim are Adequately Pleaded

The controlling law concerning the sufficiency of the pleadings demonstrates the incorrect premise on which Finjan's Motion rests.  Instead of addressing the sufficiency of Trustwave's Affirmative Defenses and Counterclaim, Finjan seeks judgment based on pages of purported facts that find no support in the pleadings, and wholesale denials of well-pleaded facts by Trustwave. Both of those approaches  are improper.[4]  Finjan also fails to apply the correct pleading standard for Trustwave's Affirmative Defenses. Rule 8(a)(2) requires the pleader to aver "a short and plain statement of the claims showing his entitlement to relief" and is governed by the heightened pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

---

[1] Finjan argues that Trustwave is "left with nothing to argue against infringement." Finjan Br. at p. 2. In fact, Trustwave has many non-infringement arguments but they are not at issue here.  For example, the Federal Circuit recently affirmed Judge Alsup's ruling construing terms of Finjan's '154 Patent and awarding summary judgment of non-infringement on similar accused products. *Finjan, Inc. v. Juniper Networks, Inc.*, 387 F. Supp. 3d 1004, 1006-1014 (N.D. Cal. May 29, 2019), *aff'd*, Case No. 2019-2405 (Fed. Cir. Oct. 9, 2020).

[2] As this Court is aware, Finjan and Trustwave have litigated Finjan's breach of contract claim related to the 2012 agreement for the last two years in the Delaware Superior Court, with Judge Carpenter rendering multiple decisions in Trustwave's favor that directly contradict Finjan's positions in this motion.  *See Finjan, Inc. v. Trustwave Holdings, Inc.*, Superior Court of the State of Delaware Case No. N18C-04-006 WCC CCLD, filed April 4, 2018 and removed as Case No. 20-372 on March 16, 2020, the same day Finjan filed this action.  Finjan misstatements of Trustwave's and Singtel's alleged breach of the 2012 agreement have little relevance to the sufficiency of Trustwave's pleading.

[3] Relevant facts are detailed, with cites, throughout the Argument.

[4] Cases cited by Finjan are at an entirely different procedural posture.  *See*, *e.g.*, *Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386 (D. Del. May 2, 2019)(denying motion for preliminary injunction) (cited at Finjan Br. at p. 11).

*Cadence Pharm.,* 2012 WL 4565013, at *1 n. 1 (quoting *Weed v. Ally Financial, Inc.*, No. 11–2808, 2012 WL 2469544, at *3 (E.D. Pa. June 28, 2012)).  By contrast, Rule 8(c) sets the standard for affirmative defenses, and only requires a party to state, not show, an affirmative defense.  *Id.*; *see also Bayer Cropscience AG v. Dow Agrosciences LLC*, No. 10–1045 RMB/JS, 2011 WL 6934557, at *1-*2 (D. Del. Dec.30, 2011).   This Court does not apply the heightened *Twombly*/*Iqbal* pleading requirements to affirmative defenses of the sort Trustwave has asserted here.  *Cadence,* 2012 WL 4565013, at *1; *see also Intellectual Ventures I LLC v. Symantec Corp.,* C.A. No. 13-1440-LPS, 2014 WL 4773954 (D. Del. Sept. 24, 2014); *Bayer Cropscience,* 2011 WL 6934557, at *1 ("While the Third Circuit has not yet opined as to whether *Twombly*/*Iqbal* is applicable to affirmative defenses, this Court agrees with those courts that have found *Twombly*/*Iqbal* inapplicable to affirmative defenses."); *Internet Media Corp. v. Hearst Newspapers, LLC*, No. 10–690–SLR, 2012 WL 3867165, at *3 (D. Del. Sept.6, 2012) (agreeing with "well-articulated rationale" that "[i]n light of the differences between Rules 8(a) and 8(c) in text and purpose, [ ] *Twombly* and *Iqbal* do not apply to affirmative defenses…", which need not be plausible to survive. [An affirmative defense] must merely provide fair notice of the issue involved.") (internal quotation marks omitted); *XpertUniverse, Inc. v. Cisco Systems, Inc.*, 868 F.Supp.2d 376, 383 n. 3 (D. Del. June 19, 2012) (joining "the majority of the District Courts in the Third Circuit [that] have rejected the application of *Twombly* and *Iqbal*" to affirmative defenses); *Tyco Fire Products, LP v. Victaulic Co.*, 777 F.Supp.2d 893, 898-901 (E.D. Pa. April 12, 2011) (collecting cases).[5]

---

[5] The Delaware case cited by Finjan regarding the standard for striking affirmative defenses—*Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358-59 (D. Del. March 30, 2009)—concerns allegations of inequitable conduct that must comply with the particularity standard set by Rule 9, which does not apply to Trustwave's challenged Affirmative Defenses. *See* Finjan Br. at p. 7.

5

**i. Trustwave's Affirmative Defenses**

Under Rule 12(f), a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." But, "[m]otions to strike are generally disfavored and ordinarily are denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Cadence*, 2012 WL 4565013, at *1 (quoting *Sun Microsystems, Inc. v. Versata Entm't., Inc.*, 630 F.Supp.2d 395, 400 (D. Del. July 1, 2009)). "A motion to strike will not be granted where the sufficiency of the defense depends on disputed issues of facts or where it is used to determine disputed and substantial questions of law." *Cadence*, 2012 WL 4565013, at *1 (quoting *Weed*, 2012 WL 2469544, at *2. "Such a motion should be denied if disputed issues of fact or law are implicated or if the alleged insufficiency is not clearly apparent from the pleadings." *Cadence*, 2012 WL 4565013, at *1 (quoting *Floyd v. Black Swan Shipping Co., Ltd.*, C.A. No. 98–4207, 2001 WL 799848, at *1 (E.D. Pa. July 13, 2001).

Trustwave's license (Eleventh), legal estoppel (Twelfth)[6], and patent exhaustion (Thirteenth)[7] Defenses are adequately pled. Under the applicable pleading standard, Trustwave

---

[6] To establish a finding of implied license through legal estoppel, defendant must establish that plaintiff: (1) licensed or assigned a right; (2) received consideration for that right; and (3) then sought to derogate from the right granted. *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F.Supp.2d 375, 384 (D. Del. June 28, 2005) (citing *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir.1997) and *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1375 (Fed. Cir.2001)).

[7] Finjan does not even advance an argument for striking Trustwave's Thirteenth Affirmative Defense regarding patent exhaustion. Finjan merely claims that "[t]he facts underlying each affirmative defense are the same" without providing any specific analysis of the alleged deficiencies in Trustwave's patent exhaustion defense. Finjan Br. at p. 5. Trustwave's Thirteenth Affirmative Defense is sufficiently pled:

> On information and belief, Finjan has patent licenses that permit licensees to sell licensed products to third parties and permits the licensee's customers to use and

could have merely stated these defenses, but it went above and beyond its obligation under Rule 8(c) and put Finjan on notice of specific factual support for these Defenses.  Even under *Twombly*/*Iqbal*, Trustwave's allegations in these Defenses provide concrete factual evidence that demonstrates defenses that are plausible on their face.  Although Trustwave of course ultimately bears the burden of proving these Defenses, Finjan seeks to place the burden on Trustwave to provide dispositive support for these Defenses in Trustwave's initial pleading. Finjan's Motion fails to cite a single case where a Court struck a defendant's license, legal estoppel defense, or patent exhaustion defense in response to a Rule 12(f) motion.  Instead, Finjan only points to disputed facts and  summary judgment cases.  Trustwave's challenged Affirmative Defenses are adequately pled under Rule 8(c), and even under *Twombly*/*Iqbal*. Thus, this Court should deny Finjan's motion to strike.  *Lexington Luminance LLC v. TCL Multimedia Technology Holdings, Ltd.*, C.A. No. 16-11458, 2017 WL 3795769, *8 (D. Mass. August 30, 2017) (denying motion to strike license/exhaustion defenses as they "must only provide notice of the issues involved").

---

incorporate licensed products into the customer's own products. In exchange for such licenses, Finjan claims that it "has generated more than US $350 million in revenue from over 25 patent licenses covering Finjan's patented inventions to date." To the extent Finjan claims that third party licensed products sold or incorporated by Trustwave practice the '154 patent, then Trustwave's sales of such third-party products are authorized sales and Finjan's patent rights to such third-party products are exhausted.

Answer at p. 28.  Trustwave's patent exhaustion defense describes extensive licensing of the '154 patent and its impact on Trustwave's authorized re-sale or use of third-party products covered by Finjan's licenses.  *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1535 (2017) ("So long as a licensee complies with the license when selling an item, the patentee has, in effect, authorized the sale. That licensee's sale is treated, for purposes of patent exhaustion, as if the patentee made the sale itself. The result: The sale exhausts the patentee's rights in that item.").

## ii.  Trustwave's Counterclaim

Finjan's motion to dismiss Trustwave's breach of contract counterclaim for failure to state a claim is evaluated under the *Twombly*/*Iqbal* standard.  *Cadence,* 2012 WL 4565013, at *1 n. 1.  The Court must accept all of the counterclaims' s well-pleaded facts as true and draw all reasonable inferences in favor of Trustwave as the non-moving party. *See Maio v. Aetna, Inc*., 221 F.3d 472, 500 (3d Cir.2000).  Next, the court determines "whether the facts alleged in the [counterclaim] are sufficient to show that [Trustwave] has a 'plausible claim for relief.'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir.2009) (quoting *Iqbal*, 556 U.S. at 679).  Trustwave's Counterclaim is facially plausible if the factual content allows the Court to draw the reasonable inference that Finjan is liable for breach of contract.  *Iqbal*, 556 U.S. at 678.  Trustwave's counterclaim "must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a counterclaim and give Finjan fair notice of what Trustwave claims and the grounds upon which it rests.  *Wilkerson v. New Media Tech. Charter Sch. Inc*., 522 F.3d 315, 321 (3d Cir.2008); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Delaware law, a breach of contract claim requires: (1) the existence of a contract, (2) the breach of an obligation imposed by that contract, and (3) resulting damages to the claimant.  *Ampro Computers, Inc. v. LXE, LLC*, No. 13–1937–LPS, 2015 WL 5257153, at *3 (D. Del. September 9, 2015) (citing *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  Here, Trustwave's counterclaim (1) identifies the 2012 Agreement (*see* D.I. 11 at ¶¶ 12-18 and 25-26), which Finjan admits is a valid contract, (2) alleges that Finjan breached the 2012 Agreement by filing this action alleging infringement of the '154 patent based on Integrated Licensed Products and Services under the parties' agreement, including SEG and

SWG (*see id.* at ¶¶ 15-18 and 27-28), and (3) alleges resulting damages to Trustwave, namely attorneys' fees and costs associated with the defense of this action (*see id.* at ¶ 29).  Finjan's Motion only concerns sufficiency of Trustwave's allegations of breach of the 2012 Agreement.

> ### b.   As Pleaded in the Complaint, the 2012 License Granted Trustwave Rights to the '154 Patent

As set forth in Trustwave's Eleventh and Twelfth Affirmative Defenses and Trustwave's Counterclaim, the 2012 Agreement granted Trustwave's Accused Products, which qualify as Integrated Licensed Products and Services, rights to, *inter alia,* the '154 Patent.[8]  When properly interpreted, these rights bar Finjan's infringement claims based on either an express license or an implied licensed.  The factual support for the correct interpretation of the 2012 Agreement detailed below is included in Trustwave's Answer and Counterclaims and exhibits attached thereto.[9]  *See Device Enhancement LLC. v. Amazon.com, Inc.*, 189 F. Supp. 3d 392, 395 (D. Del. May 17, 2016) ("a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

With regard to the parties' differing contractual interpretations, Finjan's Motion fails for two reasons.  First, Finjan's interpretation of the plain meaning of the 2012 Agreement is incorrect. *LCY Chemical Corp. v. Kraton Performance Polymers, Inc.*, No. 14-1279 (GMS),

---

[8] Because it will require, in part, going beyond the pleadings to establish that the Accused Products are Integrated Licensed Products and Services, Trustwave did not believe it was appropriate to move to dismiss Finjan's Complaint.

[9] Trustwave's Answer and Counterclaim to Finjan's FAC has five exhibits.  D.I. 36.  The 2012 Agreement is Ex. 1.  *Id.*  Finjan's FY2017 10-K is Ex. 2.  *Id.*  The November 2, 2009 Patent License Agreement between M86 Security, Inc. ("M86") and Finjan (the "2009 Agreement") is Ex. 3.  *Id.*  A redline comparison showing changes going from the 2009 Agreement to the 2012 Agreement is Ex. 4.  *Id.* An email communication between Finjan and Trustwave counsel on November 1, 2015 is Ex. 5.  *Id.*

2015 WL 4486783, at *2 (D. Del. July 23, 2015) (a court should "give effect to the plain-meaning of [a] contract's terms and provisions") (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60) (Del. 2010). If the Court decides that the language of the 2012 Agreement "is plain and clear on its face" and "conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent." *See Choupak v. Rivkin*, No. 7000 VCL, 2015 WL 1589610, at *18 (Del. Ch. Apr. 6, 2015) (*quoting City Investing Co. Liquid. Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993)). The 2012 Agreement gives Trustwave an express license to sell the Accused Products royalty free, including under the '154 Patent.

Second, Finjan's Motion fails even if the Court determines that an ambiguity exists in the 2012 Agreement. *Markow v. Synageva Biopharma Corp.*, No. N15C–06–152 WCC, 2016 WL 1613419, at *5 (Del. Super. Ct. Mar. 3, 2016) (Ambiguity exists "when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."). If the Court finds that the terms of the 2012 Agreement are ambiguous, then Finjan's Motion should be denied.

> In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions. Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the only reasonable construction as a matter of law.
> …
>
> Because the provisions at issue in the Agreement are susceptible to more than one reasonable interpretation, for purposes of deciding a motion to dismiss, their meaning must be construed in the light most favorable to the non-moving party.

*VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 615 (Del.2003) (citing *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del.1996); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del.2002); *McMullin v. Beran*, 765 A.2d 910, 916 (Del.2000)). Furthermore, if the terms of the 2012 Agreement are found to be ambiguous, then

extrinsic evidence may be considered to determine the parties' intentions. *See AT&T Corp. v. Lillis*, 953 A.2d 241, 253 (Del. 2008).

In the alternative, if no express license exists, then the rights Finjan conveyed have been derogated such that an implied license is warranted.

### i.   The '154 Patent and the Accused Products

The '154 Patent claims priority through a parent application to December 12, 2005. Counterclaim at ¶ 23.  Ultimately, the '154 Patent issued after the Patent Office mailed notices of allowance on November 2, 2011 and December 22, 2011 and Finjan paid the issue fee on February 29, 2012, prior to the execution of the 2012 Agreement.  *Id*. at ¶¶ 24-25.  Accordingly, Finjan knew the scope of the claims of the '154 Patent when it executed the 2012 Agreement including the definition of Integrated Licensed Products and Services (Section 1.5), grant of rights associated with Integrated Licensed Products and Services (Section 2.1.1(c)), and the warranty regarding dominating patents (Section 4.1(c)) discussed in the following analysis.

As discussed below, the Accused Products were either legacy Finjan products or products that later incorporated legacy Finjan products.  *See* D.I. 36 at Ex. 5.  Through this action, Finjan has sued Trustwave for infringement based on products Finjan sold to Trustwave's predecessor, M86, even after granting rights to Trustwave to sell these products royalty-free in exchange for over ███████ in compensation to Finjan.  Stated differently, Finjan, through its infringement claim in this action, seeks to derogate the rights granted to Trustwave.

### ii.   Finjan Sells Its Cybersecurity Product Line to M86 and Grants M86 the Original 2009 Patent License Agreement

In November 2009, Finjan sold its non-patent assets, including its cybersecurity product line, to M86:

> In October 2009, [Finjan Software, Inc. ("FSI")] transferred its portfolio of intellectual property to Finjan (its wholly-owned subsidiary at the time). Thereafter, in November 2009, FSI sold certain assets, including certain of its operating subsidiaries, not including Finjan, and its sales and marketing assets to M86 Security ("M86"). Finjan also granted a fully-paid, non-exclusive patent license to M86, in consideration for which M86 issued shares of its common stock to Finjan and FSI. In connection with that transaction, and subsequent to November 2009, FSI and its remaining subsidiaries (including Finjan) ceased the development, manufacture, marketing and sale of its products, as well as research conducted through its Malicious Code Research Center as part of a confidential non-compete provision. Finjan retained ownership of its patents and all related rights.

*See* D.I. 36 at Ex. 2, p. 5.  As discussed in Finjan's 10-K above, it sold its operating assets to M86 and granted M86 intellectual property rights necessary to use, grow, and expand the product lines acquired from Finjan.  D.I. 36 at Ex. 3 at First WHEREAS Clause (discussing Finjan's sale of "web security services and products" to M86 in an asset purchase agreement).  Finjan's sole focus became monetization of its patent portfolio.  Counterclaims at D.I. 36 at ¶ 5.

### iii. Trustwave's Acquisition of M86 and the Amended and Restated Patent License Agreement

In March 2012, Trustwave acquired M86 and, as part of the transaction, entered into the 2012 Agreement with Finjan.  *See* D.I. 36  at Ex. 1.  One goal of the 2012 Agreement was to grant Trustwave rights to specific patents listed as Licensed Patents at listed the end of the 2012 Agreement.  This first set of rights was for Licensed Products and Services, which are any Trustwave products or services that infringe a valid claim of a Licensed Patent.  *Id*. at Section 1.7, 1.8 and 2.1.1.(a)-(b).  Notably, the rights granted to Licensed Products and Services are specifically tied to patents listed in the 2012 Agreement as Licensed Patents and are not reliant upon a connection to legacy M86-Finjan products.  *Id.*

But, another purpose of the 2012 Agreement was to ensure that Trustwave obtained the necessary patent rights to use, grow, and expand the product lines being acquired from M86, including the former Finjan product lines.   *Id*. at Fifth WHEREAS Clause ("[Finjan] and

[Trustwave] desire to amend and restate the Original License, on the terms and subject to the conditions set forth herein in order to allow [Trustwave] to conduct, grow and expand the business acquired from [M86] on the terms and conditions set forth herein.").  Accordingly, although many of the terms in the original 2009 Agreement between Finjan and M86 were not changed in the 2012 Agreement between Finjan and Trustwave, specific changes were made to account for how legacy M86 products could be used by Trustwave regardless of the specific patents listed in the agreement.  First and foremost, an entirely new class of products—Integrated Licensed Products and Services—was introduced in the 2012 Agreement and entirely new rights were granted for such Integrated Licensed Products and Services.  *Id.* at Sections 1.5 and 2.1.1(c).

A comparison of the 2009 Agreement and the 2012 Agreement (*see* D.I. 36 at Ex. 4 – Redline Comparison) shows that the material changes in the 2012 Agreement were all directed to defining the Integrated Licensed Products and Services and granting rights and warranties with respect to this special class of products, which again were products incorporating the legacy Finjan products acquired by M86.  *See Crown Books Corp. v. Bookstop Inc.*, 1990 WL 26166, at *1 (Del.Ch. Feb. 28, 1990) ("[I]n construing the legal obligations created by [a] document, it is appropriate for the court to consider not only the language of that document but also the language of contracts among the same parties executed or amended as of the same date that deal with related matters.").  To start, Integrated Licensed Products and Services is defined in Section 1.5:

1.5.   **"Integrated  Licensed  Products  and  Services"**  

*See* D.I. 36 at Ex. 4 (showing addition of this class of products in the 2012 Agreement).  The ████████████████████████████████ language makes it clear that the parties intended for the Integrated Licensed Products and Services to be a broader category of products

that was not limited by, or linked to, the Licensed Patents.  *In re EP Liquidation, LLC*, 583 B.R. 304, 321 n. 95 (Bankr. D. Del. 2018) (quoting *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973) ("A contract is to be considered as a whole, and, if possible, all its provisions should be given effect; while a contract's provisions must be interpreted with reference to the whole the specific controls the general; and a contract should be construed so as to give effect to its general purpose.")).  Finjan's Motion ignores Integrated Licensed Products and Services.  Instead, Finjan's Motion relies on reciting over and over that the '154 patent is not listed as a Licensed Patent under the 2012 Agreement—a point Trustwave does not dispute.

Next, as referred to in the definition of Integrated Licensed Products and Services, Parent's Existing Products and Services is defined in Section 1.11:



1.11.   **"Parent's Existing Products and Services"** means

*See* D.I. 36 at Ex. 4 (showing addition of Section 1.11 in the 2012 Agreement).

The inclusion of Parent's Existing Products and Services as yet another class of products, affirms that the parties intended the product assets acquired by M86 from Finjan in 2009 would remain Trustwave's/M86's products to use, modify and exploit.  If the rights granted to Trustwave under the 2012 Agreement were limited to rights under the Licensed Patents, then there was no reason for the special classes of products—Parent's Existing Products and Services and the Integrated Licensed Products and Services—to be added

to the 2012 Agreement.  In other words, if as Finjan argues, the rights granted under the 2012 Agreement are limited to rights under the listed Licensed Patents, then the other classes of products beyond the Licensed Products and Services would be necessarily superfluous – an interpretation legally prohibited. *Intercept Pharm., Inc. v. Fiorucci*, 277 F. Supp. 3d 678, 686 (D. Del. September 28, 2017) ("Delaware law states that contractual language should be interpreted in a way that gives effect to all terms, 'so as not to render any part of the contract mere surplusage.' *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 397 (Del. 2010). Additionally, the contract must be read as a whole, and contractual provisions must be interpreted in a way that 'give[s] effect to every term of the instrument and reconcile[s] all provisions of the instrument.' *Energy Partners, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *13 (Del. Ch. Oct. 11, 2006).").  Based on the plain language of the 2012 Agreement alone, Finjan's argument is misplaced.

Trustwave's interpretation is confirmed by review of the additional rights granted to Trustwave in the 2012 Agreement, which are tied to Integrated Licensed Products and Services:

(c) notwithstanding anything to the contrary in this Agreement, including without



*See* D.I. 36 at Ex. 4 (showing addition of Section 2.1.1(c) in the 2012 Agreement).



*Id*. (showing no changes to Section 2.1.1(a)-(b) in the 2012 Agreement).

This proper interpretation—i.e., that Trustwave's rights to use, modify, and exploit the special class of Integrated License Products and Services is separate from the listed Licensed Patents—is confirmed by four other provisions, three added to the 2012 Agreement and one deleted from the 2009 Agreement and not included in the 2012 Agreement.  First, the definition of Net Sales in Section 1.9 exempts two classes of products from any royalty obligations that could be triggered by certain events, one of which is Integrated Licensed Products and Services:



*See* D.I. 36 at Ex. 4 (showing addition of the last paragraph of Section 1.9 in the 2012 Agreement).

Again, Finjan's Motion fails to explain why both categories of products are listed, with different qualifiers.  If, as Finjan argues, Trustwave's rights were limited to the Licensed Patents, then inclusion of Integrated Products and Services in Section 1.9's royalty exemption clause would be superfluous. Second,

16



*See* D.I. 36 at Ex. 4 (showing changes to Section 3.1, specifically the addition of the reference 2.1.1(c) as fully paid up) (emphasis added).



D.I. 36 at Ex. 3 (2009 Agreement) at Section 2.1.4.2; *see also* Ex. 4 (showing Section 2.1.4.2 was deleted and not included in the 2012 Agreement).  In the 2012 Agreement, the parties affirmatively removed that limitation and also added a clause under which Finjan represented and warranted:



---

[10] This warranty further supports Trustwave's interpretation in support of its affirmative defense and counterclaim related to Trustwave's rights to Integrated Licensed Products and Services.  In addition, Finjan has breached this free-standing warranty, which further supports Trustwave's counterclaim and legal estoppel affirmative defense.  With regard to legal estoppel, the Federal Circuit in *Endo Pharm.* did not limit the application of legal estoppel to unlicensed continuation patents as Finjan argues (*see* Br. at p. 10).  Instead the *Endo* Court recognized the limits of its holding, stating "patent license agreements can be written to convey different scopes of promises not to sue, e.g., a promise not to sue under a specific patent or, more broadly, a promise not to sue under any patent the licensor now has or may acquire in the future."  *Endo Pharmaceuticals Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1378-79 (Fed. Cir. 2014) (quoting *Spindelfabrik Suessen–Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987), and *TransCore, LP v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009)); *see also AMP Inc. v. United States,* 389 F.2d 448, 454-456 (Ct. Cl. 1968) (finding that the patentee granted the "right to practice and have practiced the idea embodied by the [accused device] in question" and "hold[ing] that defendant is licensed by implication under the dominant [asserted patent]").  Here, as outlined above, Finjan granted rights to Integrated Licensed Products and Services above and beyond the listed patents and therefore, Trustwave's legal estoppel affirmative defenses is not bound by whether the '154 Patent is a continuation to a listed patent.  Furthermore, ███████████████████████████████████

*See* D.I. 36 at Ex. 4 (showing warranty in Section 4.1(c) was added in the 2012 Agreement).[11]
Again, the additions and deletions from the 2009 Agreement to the 2012 Agreement demonstrate
that the parties intended to provide Trustwave with rights to use, modify, and exploit M86's legacy
product line—i.e., Integrated Licensed Products and Services—without further hinderance from
Finjan's patent monetization activities.

### iv.   Extrinsic Evidence Supports Trustwave's Interpretation

Should the Court find the 2012 Agreement ambiguous, Trustwave has already identified
in its Answer and Counterclaim compelling extrinsic evidence supporting its interpretation.
Specifically, Finjan has unambiguously stated, over and over, that Trustwave has license rights
to the '154 Patent for the Accused Products.  This includes Finjan's statements to Trustwave, and
Finjan's sworn statements during a jury trial and to the USPTO.

First, the alleged notice of the '154 Patent Finjan provided to Trustwave on November 1,
2015 cited in paragraph 31 of Finjan's own Complaint, to the contrary, was an unambiguous
statement that Trustwave's Accused Products were licensed to the '154 Patent:



---

[11] Finjan's argument that Trustwave is required to present a detailed claim analysis in Trustwave's
counterclaim is misplaced.  Finjan Br. at pp. 12-14; *see also Align Tech., Inc. v. 3Shape A/S*, 339
F. Supp. 3d 435, 446 (D. Del. 2018) (rejecting that the "equivalent of infringement contentions"
is required at the pleading stage since that "is more than the law demand[s]").  Notably, no such
detailed analysis is provided in Finjan's FAC for Finjan's patent allegations against Trustwave.

D.I. 36 at Ex. 5 (emphasis added). ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

*Id.* (attachment to November 1, 2015 Email). Thus, Finjan acknowledged that SWG was a Finjan product, which was sold to M86, which in turn was incorporated into Trustwave's SEG product. This is the exact chain of events contemplated in the parties' 2012 Agreement to give rise to Integrated Licensed Products and Services—because M86 purchased Finjan's product line (i.e., Parent's Existing Products and Services), such products could be incorporated in Trustwave product (i.e., Integrated Licensed Products and Services, such as SEG), without running afoul of Finjan patents not listed as Licensed Patents (e.g., the '154 Patent).[12]

Next, during trial testimony concerning damages related to infringement of the '154 patent, Finjan's witness cited Trustwave's rights to the '154 patent and the payment Trustwave had made to Finjan for such rights as evidence in support of Finjan's damages argument. Counterclaim at ¶ 30; *see also Finjan v. Sophos,* N.D. Cal. Case No. 3:14-cv-01197-WHO, Dkt. No. 364 - Trial Transcript Day 5 on September 12, 2016 at 821:22-822:16 and 853:1-6. After hearing this

---

[12]It is not surprising that Finjan, abundantly aware of Trustwave's product sales and development, waited eight years to sue Trustwave on the '154 Patent.

evidence, the jury awarded Finjan $15,000,000 in damages.  *Finjan v. Sophos,* N.D. Cal. Case No. 3:14-cv-01197-WHO, Dkt. No. 398 – September 21, 2016 Jury Verdict.

Finally, during IPR proceedings challenging the validity of the '154 patent, Finjan relied on "licensing of Finjan's patent portfolio, including the '154 Patent, to several technology companies, including McAfee, Inc./Intel Corporation, Websense, Inc., Webroot Inc., **Trustwave Holdings, Inc., M86 Security** and Microsoft; copying by competitors; and commercial success." Counterclaim at ¶ 31; *see also Palo Alto Networks, Inc. v. Finjan, Inc.,* IPR2015-01979, Paper No. 6 – Finjan's December 29, 2015 Patent Owner Preliminary Response at p. 33 (emphasis added); *Palo Alto Networks, Inc. v. Finjan, Inc.*, IPR2016-00151, Paper No. 8 – Finjan's February 17, 2016 Patent Owner Preliminary Response at p. 32.

These repeated, unambiguous statements by Finjan show that, until recently (after developments in the Delaware Superior Court case), Finjan also believed that Trustwave's Accused Products were fully licensed, including under the '154 patent.  Finjan provides no explanation why its interpretation has changed to allow it all of a sudden to pursue its claim against Trustwave.  There is no reconciling Finjan's past statements with its current allegations.  Again, if the Court elects to delve into interpretation of the 2012 Agreement based on the pleading alone, the extrinsic evidence presented overwhelming supports adoption of Trustwave's interpretation and, in any event, denial of Finjan's Motion.

## IV.     CONCLUSION

Trustwave respectfully requests that the Court deny Finjan's motion to strike Trustwave's Eleventh, Twelfth, and Thirteenth Affirmative Defenses and Finjan's motion to dismiss Trustwave's Counterclaim for breach of contract.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/  Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

OF COUNSEL:

John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

*Attorneys for Defendant*
*Trustwave Holdings, Inc.*

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

January 15, 2021