IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-371 (LPS) |
| | ) |
| TRUSTWAVE HOLDINGS, INC. and | ) **PUBLIC VERSION** |
| SINGAPORE TELECOMMUNICATIONS | ) **Filed January 22, 2021** |
| LIMITED | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT SINGAPORE TELECOMMUNICATIONS LIMITED'S
REPLY BRIEF IN SUPPORT OF RENEWED MOTION TO
<u>DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

OF COUNSEL:

John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

*Attorneys for Defendant
Singapore Telecommunications Limited's*

January 15, 2021

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ..................................................................................................................1

II.  ARGUMENT ......................................................................................................................1

    a. Singtel's Conduct Does Not Give Rise to Personal Jurisdiction ....................................1

    b. Singtel's Subsidiaries Conduct Should Not Be Imputed on To Singtel .........................3

    c. The forum-selection clause in the License Agreement between
       Trustwave and Finjan does not establish jurisdiction over Singtel................................5

    d. Rule 4(k)(2) Does Not Save Finjan's Claim.................................................................7

    e. Additional Jurisdictional Discovery is Not Warranted ..................................................9

V.  CONCLUSION.................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*3G Licensing, S.A. v. Lenovo Group Ltd.*,
    2019 WL 3974539 (D. Del. 2019) ...................................................................................9

*Aviation W. Charters, LLC v. Freer*,
    2015 WL 5138285 (Del. Super. Ct. July 2, 2015) ............................................................6

*Eastman Chem. Co. v. AlphaPet Inc.*,
    2011 WL 6004079 (D. Del. 2011) ...............................................................................6, 9

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
    335 F. Supp. 3d 657 (D. Del. 2018) .............................................................................3, 4

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Interm.*,
    269 F.3d 187 (3d Cir. 2001) ...........................................................................................6

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) ...........................................................................................9

*Fatouros v. Lambrakis*,
    627 F. App'x 84 (3d Cir. 2015) .....................................................................................9

*Finjan, Inc. v. Juniper Networks, Inc.*,
    387 F. Supp. 3d 1004 (N.D. Cal. May 29, 2019) ...........................................................8

*Finjan, Inc. v. Juniper Networks, Inc.*,
    Case No. 2019-2405 (Fed. Cir. Oct. 9, 2020) .................................................................8

*Finjan, Inc. v. Juniper Networks, Inc.*,
    2021 WL 75735 (N.D. Cal. Jan. 9, 2021) .......................................................................8

*Hansen v. Neumueller GmbH*,
    163 F.R.D. 471 (D. Del. 1995) .......................................................................................9

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
    107 F.3d 1026 (3d Cir. 1997) .........................................................................................9

*McDonough v. Gorman*,
    2017 WL 3528846 (D. Del. 2017) ...............................................................................10

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
    890 F.3d 995 (Fed. Cir. 2018) ........................................................................................9

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 636 (D. Del. 2006) ................................................................3

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
   263 F. Supp. 3d 498 (D. Del. 2017).............................................................3, 5

*Ninespot, Inc. v. Jupai Holdings Ltd.*,
   2018 WL 3626325 (D. Del. 2018) ...................................................................7

*Polar Electro Oy v. Suunto Oy*,
   829 F.3d 1343 (Fed. Cir. 2016).......................................................................1

*S. Seafood Co. v. Holt Cargo Sys., Inc.*,
   1997 WL 539763 (E.D. Pa. 1997) .................................................................10

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009)....................................................................7, 8

*TriDinetworks Ltd. v. NXP USA, Inc*,
   2020 WL 2220152 (D. Del. 2020) ............................................................7, 8, 9

*Truinject Corp. v. Nestle Skin Health, S.A.*,
   2019 WL 6828984 (D. Del. 2019), *report and recommendation*
   *adopted by* 2020 WL 1270916 (D. Del. Mar. 17, 2020) ...................................7

*Univ. of Mass. Med. Sch. v. l'Oréal S.A.*,
   2018 WL 5919745 (D. Del. 2018) ...................................................................5

## Statutes

28 U.S.C. §1367.....................................................................................................8

35 U.S.C. § 271.................................................................................................2, 8

## Rules

Rule 4(k)(2)....................................................................................................7, 8, 9

## I.      INTRODUCTION

Finjan fails to identify any *facts* supporting personal jurisdiction over Singtel.  Finjan repeats allegations over and over as if repetition can somehow overcome lack of evidence.  Finjan repeats these allegations even after Singtel, through a voluntary production of documents and interrogatory answers, provided Finjan with information that demonstrates that Finjan's allegations were misplaced.  Finjan should have dismissed Singtel from this action long ago.[1]

## II.     ARGUMENT

### a.  Singtel's Conduct Does Not Give Rise to Personal Jurisdiction

Finjan's arguments fail to focus on the forum at issue (Delaware), the products at issue (Trustwave's SEG and SWG products or products allegedly covered by Finjan's Contract Claim), and the conduct of the party at issue (Singtel).  Without any support, Finjan continues to allege that Singtel "develop[s], manufacture[s], and sell[s] the accused cybersecurity products and services in the United States."  Finjan Br. at 8.  But the unrebutted evidence establishes that the accused products are Trustwave products developed long before Singtel acquired Trustwave in 2015.  July 30 Yang Decl. at ¶¶ 8-10; Sep. 16 Yang Decl. at ¶¶ 19-20.  Singtel does not design or develop cybersecurity products.  *Id.*  Instead, Singtel resells Trustwave and other third-party cybersecurity products to Singtel telecommunications customers, the overwhelming majority of which reside in the Asian-Pacific market.  *Id*.

This is not a situation where a foreign company is using a domestic subsidiary or affiliate to sell the foreign company's products in the U.S. *See*, *e.g.*, *Polar Electro Oy v. Suunto Oy*, 829

---

[1] Finjan's FAC contains two counts against Singtel: (1) infringement of U.S. Patent No. 8,141,154 and (2) breach of a 2012 Amended and Restated Patent License Agreement between Finjan and Singtel.  Trustwave's Secure Email Gateway ("SEG") and Secure Web Gateway ("SWG") are accused of infringement in Finjan's patent claim.  A wider category of Trustwave cybersecurity products are at issue in Finjan's contract claim.

F.3d 1343, 1350 (Fed. Cir. 2016) (foreign defendant's products distributed in the U.S. and packaged and shipped by the foreign defendant to 94 retailers in Delaware).  Here we have just the opposite.  Singtel is reselling Trustwave cybersecurity products in the Asian-Pacific market, albeit in limited fashion.[2]  The products at issue are designed and manufactured by Trustwave, not by Singtel.  Singtel sells these Trustwave products under a reseller agreement negotiated at arms-length, just as Singtel resells other third-party cybersecurity products (i.e., non-Trustwave products) to its telecommunications customers, as it did before it acquired Trustwave. Ex. 16[3] at 4 ("multi-million-dollar programs with FireEye and Akamai to resell FireEye and Akamai's cybersecurity products and services to Singtel's customers").  ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ *Id*. at 4-5.

Finjan does not even address the fact that Singtel has not sold in the United States the products accused in Finjan's patent claim: "In fact, Singtel has not sold the Accused Products anywhere in the United States . . ."  Ex. 4 at 6.  Accordingly, Singtel has not committed any of the acts articulated in Section 271 (i.e., "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention"). That is not surprising. Singtel is  located in Singapore and is focused on serving customers in the

---

[2] Finjan cites a press release (Ex. 14) and an interview with a Singtel junior employee (Ex. 15) to argue that Singtel is involved in the design of Trustwave's cybersecurity products.  The press release merely shows that Trustwave is hosting a platform within Singapore to comply with Singaporean data privacy laws.  The interview shows that Singtel employees responsible for reselling Trustwave products in the Asian-Pacific market are trained to understand how the products operate and function.  It is not surprising that Singtel staff responsible for reselling Trustwave products are trained to understand how the products work.  Neither shows that Singtel is involved in the design and manufacturing of Trustwave's products. Neither has any connection to the products at issue.  Neither has any connection to the U.S., let alone Delaware.

[3] Unless noted otherwise, "Ex." citations refer to exhibits submitted at D.I. 50.

Asian-Pacific market.  Finjan cannot identify any overseas patent rights to be enforced against Singtel in Delaware.  Likewise, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████  Ex. 4 at 6-7.  Singtel simply has not sold any products in the U.S. (let alone in Delaware) relevant to Finjan's Patent or Contract Claims.

### b.  Singtel's Subsidiaries' Conduct Should Not Be Imputed to Singtel

Finjan offers no substantiation of its allegation that Singtel and Trustwave "operate as a single entity."  Finjan Br. at 1.  Finjan's argument seems to be Singtel owns Trustwave, and therefore they are effectively the same entity.  Finjan does not set forth a single fact to demonstrate that the corporate veil between Singtel and Trustwave should be pierced or that Trustwave is merely Singtel's alter ego.  Singtel set forth in detail how corporate formalities are maintained between Singtel and Trustwave.  *See generally* Sept. 16 Yang Decl. Singtel also unequivocally stated that Annabel Lewis, Trustwave's prior General Counsel, was never a Singtel employee and never served as Singtel's agent before or after Singtel's acquisition of Trustwave.  Sep. 16 Yang Decl. at ¶¶ 21-22.  Finjan has not rebutted these facts.  It hasn't even tried. Finjan simply ignores the facts, instead repeating its unsupported allegations. But mere ownership does not  confer personal jurisdiction (*see Monsanto Co. v. Syngenta Seeds, Inc*., 443 F. Supp. 2d 636, 645 (D. Del. 2006)) and an overlap between senior management does not wipe away corporate distinctions (*see, e.g., Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 505 (D. Del. 2017); *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 677 (D. Del. 2018)).

Instead, Finjan attempts to impute every action by one of Singtel's U.S. subsidiaries to Singtel.  Yes, Singtel has U.S.-based subsidiaries, one of which is Trustwave.  Yes, Singtel's

U.S.-based subsidiaries have offices and employees in the U.S.[4] These points are readily admitted in Singtel's motion, Mr. Yang's two declarations, and Singtel's voluntary interrogatory responses.  But, Singtel does not itself have offices or employees in the U.S., and the mere existence of U.S. subsidiaries, even U.S. subsidiaries with contacts with Delaware, does not give this Court jurisdiction over Singtel.  *See E.I. du Pont*, 335 F. Supp. 3d at 679-80 (no personal jurisdiction over parent company where parent and subsidiary observed corporate formalities).

Finjan also presents baseless and inappropriate claims of self-dealing based on the existence of overlap between Trustwave directors and Singtel management.  The reseller and loan agreements, which were voluntarily produced by Singtel, show that individuals with authority to bind the respective entities negotiated terms at arm's length.  Plaintiffs advancing arguments challenging separateness of related corporate entities typically argue that the foreign parent has underfunded or over withdrawn from the domestic subsidiary.  ███████████

███████████████████████████████████████

███████████████████████████████████████

Ex. 4 at 9-10. Trustwave operates as a separate entity from Singtel.  They:

- Have separate boards of directors, with no overlap between the directors on Singtel's board  (see  https://www.singtel.com/about-us/company/board-of-directors)  and  the directors on Trustwave's board.

- Maintain separate executive compensation and audit committees.

- Keep separate board and committee minutes for meetings of their respective board of directors.

- Have separate executive officers and senior management, as well as separate legal, human resources, IT, marketing, finance, accounting/audit, and procurement departments.

- Have separate computer systems that cannot be accessed by one another.

---

[4] The offices and employees cited in Finjan's brief (Ex. 17 and 18) are offices and employees of Singtel's U.S. subsidiaries.

- Maintain different and separate payroll systems and processes.

- Have separate bank accounts.

*Id.*  Furthermore, Singtel, as a Singaporean public company traded on the Singapore Exchange, follows financial reporting (including annual reports) rules and regulations that conform with the Singapore Financial Reporting Standards (International) (SFRS(I)) that require consolidated reporting of financial performance of Singtel and its subsidiaries, including Trustwave.  Ex. 16 at 4. Finjan's claim that consolidated financial reporting somehow shows that Singtel controls Trustwave's actions with the products at issue here is misplaced.  *Univ. of Mass. Med. Sch. v. l'Oréal S.A.*, 2018 WL 5919745 at *10-12 (D. Del. Nov. 13, 2018) (declining to exercise personal jurisdiction over l'Oréal S.A. based on subsidiary activities, even though it jointly disclosed financial results with its subsidiaries in a consolidated report); *Nespresso*, 263 F. Supp. at 505–506 (finding annual review report attributing a subsidiary's success to the parent company insufficient for personal jurisdiction over the parent).

It remains undisputed that Singtel has not sold the relevant products in Delaware; thus, there is no specific jurisdiction over Singtel.  The extent of Singtel's contacts with Delaware is the existence of 12 Singtel customer accounts with billing addresses in Delaware for telecommunication services (e.g., mobile phone services) provided in Singapore (Singtel does not provide any telecommunication services in Delaware – this is simply where the bills are sent).  July 30 Yang Decl at ¶ 11.  There are no systematic and continuous contacts with this forum or, therefore, general jurisdiction over Singtel.

### c.  The Forum-Selection Clause in the License Agreement between Trustwave and Finjan Does Not Establish Jurisdiction over Singtel

Finjan also argues that this Court has personal jurisdiction over Singtel because Singtel purportedly became a party to the 2012 Agreement between Finjan and Trustwave, which

includes a consent to jurisdiction in Delaware, even though it acquired Trustwave three years later.  FAC at ¶ 13.  This conclusory allegation fails to establish that Singtel—a non-signatory to the 2012 Agreement—expressly consented to personal jurisdiction in Delaware.  Finjan relies on Section 2.5 of the 2012 Agreement, which states in relevant part:

> In the event of an Acquisition of [Trustwave], all the provisions of this Agreement applicable to [Trustwave] . . ., shall be deemed to apply to the Acquirer, and its respective Affiliates that are licensed hereunder . . . .

D.I. 28 (FAC), Ex. B, 2012 Agreement at Section 2.5.  Section 6.4 provides that "the parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court" in Delaware.  Section 2.5 does not specifically identify Singtel or state that Singtel will become a "party" to the 2012 Agreement, and the 2012 Agreement can be "amended, supplemented or changed only by written agreement of the parties hereto."  *Id*. at Ex. B, Section 6.5.  The 2012 Agreement was never amended, supplemented or changed to add Singtel as a party.  Only "parties" to the 2012 Agreement consented to jurisdiction by operation of Section 6.4.  Finjan does not explain why there is a basis to haul Singtel—a Singapore entity that acquired Trustwave three years later and is named nowhere in the 2012 Agreement—into Delaware.

"[T]ypically only those parties that have actually signed the agreement-at-issue are bound by its forum selection clause."  *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 6004079, at *4 (D. Del. Nov. 4, 2011).  Although there are limited instances in which a non-signatory can be subject to a forum selection clause,[5] Finjan has not pled any here.  *See* FAC at ¶ 13.  Even if

---

[5]  The Court has declined to subject a non-signatory to a forum selection clause in similar circumstances.  *See, e.g.*, *Eastman*, 2011 WL 6004079, at *4 (refusing to exercise jurisdiction over parent company based in Thailand where its subsidiaries entered into a contract with a forum-selection clause including "affiliates"); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Interm.*, 269 F.3d 187, 192, 196-97 (3d Cir. 2001) (refusing to subject parent company to arbitration clause in contract entered into by its subsidiary based on third-party beneficiary theory where the contract stated the obligations therein applied to "the parties 'and their Affiliates . . .'"); *Aviation W. Charters, LLC v. Freer*, No. N14C-09-271 WCC CCLD, 2015

Finjan had pled that Singtel is bound by the forum selection clause as a non-party, binding Singtel would violate due process because Singtel does not have "minimum contacts" with Delaware.  *See Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592-LPS-JLH, 2019 WL 6828984, at *11 (D. Del. Dec. 13, 2019), *report and recommendation adopted by* 2020 WL 1270916 (D. Del. Mar. 17, 2020).  In *Truinject*, the Court noted that where "the party has consented to a particular forum in a 'freely negotiated' agreement," the minimum contacts analysis is not required.  *Id.*  Where, as here, however, the non-signatory "is not even a party to the agreement" and did not "freely negotiate[]" it, the Court must undertake the minimum contacts analysis.  *Id.*  As addressed above, Singtel has no meaningful contacts with Delaware.

### d.  Rule 4(k)(2) Does Not Save Finjan's Claim

Finally, Finjan's entirely new, unpled assertion that there is jurisdiction under Rule 4(k)(2) is also insufficient.  *See* FAC at ¶¶ 10-18 (no mention of Rule 4(k)(2)).  Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *TriDinetworks Ltd. v. NXP USA, Inc.*, No. 19-1062-CFC-CJB, 2020 WL 2220152, *3 (D. Del. 2020) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)).  The first and third prongs remain unsatisfied.

---

WL 5138285, at *5 (Del. Super. Ct. July 2, 2015) ("It makes sense that a signatory to an agreement . . . should generally be bound by a forum selection clause [there]in . . . However, the opposite is true here. Here, Plaintiff . . . is attempting . . . to bind a non-signatory" and "the Court find[s] such action generally inappropriate").  The cases in which courts have bound a non-signatory to a forum selection clause are distinguishable.  In such cases, the non-signatory was either involved in the drafting and negotiation or was specifically identified in the contract.  *See, e.g.*, *Ninespot, Inc. v. Jupai Holdings Ltd.*, 2018 WL 3626325, at *4 (D. Del. July 30, 2018) (finding non-signatory bound to forum selection clause in stock purchase agreement when non-signatory was party to the term sheet, was heavily involved in negotiations of the agreement, and "stood to receive a direct benefit of shares . . . from the completion" of the agreement).

For the first prong, Finjan's state law Contract Claim does not arise under federal law. Fed. R. Civ. P. 4(k)(2), Notes of Advisory Committee on Rules—1993 Amendment ("It does not establish personal jurisdiction if the only claims are those arising under state law or the law of another country, even though there might be diversity").  Finjan's patent claim does technically "arise" under federal law, and this Court may elect to find supplemental jurisdiction under 28 U.S.C. §1367 for Finjan's Contract Claim. But this Court should decline to exercise such discretion.  Again, Singtel has not sold the products accused of infringement under Finjan's patent claim in the U.S., which eliminates the possibility of liability under 35 U.S.C. § 271.  This further demonstrates that Finjan's Contract Claim "substantially predominates over" Finjan's patent claim and that "exceptional circumstances" exist warranting this Court declining to exercise jurisdiction over Finjan's Contract Claim.  28 U.S.C. §1367(c).[6]

For the third prong, as with Singtel's lack of contacts with Delaware, Finjan fails to show sufficient contacts between Singtel and the U.S. at large to justify finding specific or general jurisdiction.[7]  *TriDinetworks Ltd.*, 2020 WL 2220152, *3 ("The Rule is thus meant to allow a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the

---

[6] Other "exceptional circumstances" call into serious question the sustainability of Finjan's patent claims.  The Federal Circuit recently affirmed Judge Alsup's ruling construing terms of the '154 Patent and awarding summary judgment of non-infringement on similar accused products.  *Finjan, Inc. v. Juniper Networks, Inc.*, 387 F. Supp. 3d 1004, 1006-1014 (N.D. Cal. May 29, 2019), *aff'd*, Case No. 2019-2405 (Fed. Cir. Oct. 9, 2020).  On remand, Juniper Networks filed a motion for attorneys' fees based on Finjan's litigation misconduct, which Judge Alsup granted in part.  *Finjan, Inc. v. Juniper Networks, Inc.*, 2021 WL 75735 (N.D. Cal. Jan. 9, 2021) (finding that Finjan's repeated theory-changing warranted finding the case exceptional under Section 285 for two or the three adjudicated patents—Nos. 6,804,780 and 8,677,494 at issue in Finjan's contract claim but not the '154 patent at issue in Finjan's patent claim).  On top of the unrebutted evidence that Singtel has not made a single sale of the accused products in the U.S., Finjan continues to maintain its patent claim against both Trustwave and Singtel despite a binding, unfavorable construction of terms in the asserted claim of the '154 Patent here.

[7] Because it does not involve application of a state's long-arm statute, the Federal Circuit applies its own law to the entirety of the analysis under Rule 4(k)(2), which is then controlling in patent cases.  *TriDinetworks*, 2020 WL 2220152, *3 (citing *Synthes*, 563 F.3d at 1293).

United States, but not with the forum state, satisfy due process.") (citing *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018)).  Finjan simply incorporates its insufficient allegations into its argument under Rule 4(k)(2) without pointing to any additional contacts between Singtel and the U.S. at large.  Finjan Br. at 19.  Singtel has not sold the relevant products in the U.S., and Finjan has not pled systematic and continuous contact between Singtel and the U.S.  Without evidence that Singtel has purposefully availed itself of the U.S. market, Finjan's hail-Mary under Rule 4(k)(2) fails.  *TriDinetworks* 2020 WL 2220152, *3.  As Singtel's contacts with Delaware are insufficient, so, too, are Singtel's contacts with the U.S. in general.

### e.   Additional Jurisdictional Discovery is Not Warranted

"A court should not permit discovery as a matter of course."  *3G Licensing, S.A. v. Lenovo Group Ltd.*, No. 17-84-LPS-CJB, 2019 WL 3974539, *3 (D. Del. 2019).[8]  Instead, "[t]he court must be satisfied that there is some indication that th[e] particular defendant is amenable to suit in this forum."  *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995).  A plaintiff must come forward with "some competent evidence" that personal jurisdiction over the defendant might exist before a court permits jurisdictional discovery to proceed.  *3G Licensing*, 2019 WL 3974539, *3 (citing *Hansen*, 163 F.R.D. at 475).  A plaintiff may not undertake a "fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery."  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (noting that a mere "unsupported allegation" that the prerequisites for personal jurisdiction have been met would amount to a "clearly frivolous" claim, and would not warrant the grant of jurisdictional discovery); *Fatouros v. Lambrakis*, 627 F. App'x 84, 88 (3d Cir. 2015)

---

[8] "With regard to the relevant standard for allowing jurisdictional discovery, the Court follows regional circuit law."  *3G Licensing, S.A. v. Lenovo Group Ltd.*, at *3 n. 3 (citing *Eastman Chem, Co. v. AlphaPet Inc.*, No. 09-971-LPS-CJB, 2011 WL 6004079, at *2 n.4 (D. Del. Nov. 4, 2011).

(district court did not abuse its discretion in declining to allow jurisdictional discovery where plaintiff "did not present factual allegations that suggested with reasonable particularity the possible existence of the requisite minimum contacts"); *McDonough v. Gorman*, C.A. No. 16-203-LPS, 2017 WL 3528846, at *1 (D. Del. Aug. 16, 2017) (jurisdictional discovery may be denied "where the party that bears the burden of establishing jurisdiction fails to establish a threshold prima facie showing of personal jurisdiction") (*quoting S. Seafood Co. v. Holt Cargo Sys., Inc.*, No. CIV.A. 96-5217, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997).

Finjan had months to comb through Singtel's public filings and has also had the benefit of significant voluntary discovery.  Finjan's allegations are unsupported and frivolous.  Singtel simply has not sold the accused products in Delaware. Nor does Singtel have systematic contacts with Delaware that warrant a finding of general jurisdiction.  Finjan says that Singtel elected not to include the Singtel-Trustwave acquisition agreement in its voluntary production.  Instead, Singtel provided an interrogatory answer stating that "[a]s part of the acquisition, Singtel did not execute any agreement assigning or assuming rights and obligations under the Trustwave-Finjan patent license."  Ex. 4 at 9.  Finjan has not explained why this explanation, which undercut any argument for why the acquisition agreement is relevant to the present jurisdictional dispute, is not sufficient – especially given that Finjan does not even allege the existence of any such agreement.  Additional jurisdictional discovery would be wasteful and would serve no purpose.

## III. CONCLUSION

Singtel requests that the Court dismiss Finjan's Complaint against Singtel.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
_____

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

*Attorneys for Defendant*
*Singapore Telecommunications Limited's*

OF COUNSEL:

John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

January 15, 2021