IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN LLC, | ) | |
| | ) | Redacted: |
| Plaintiff, | ) | Public Version |
| | ) | |
| v. | ) | C.A. No. 20-371-LPS |
| | ) | |
| TRUSTWAVE HOLDINGS, INC. and | ) | |
| SINGAPORE TELECOMMUNICATIONS | ) | |
| LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

**FINJAN LLC'S REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS AND TO STRIKE</u>**

OF COUNSEL:
Bijal Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
(650) 213-0300

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff*

Dated: January 29, 2021

**TABLE OF CONTENTS**

I. TRUSTWAVE'S ALLEGATIONS ARE DEFICIENT ...................................................... 1

    A. Trustwave's Allegations Do Not Relate to the '154 Patent ....................................... 1

    B. Trustwave Did Not Receive an "Unqualified Product License" Broader Than the License to the "Licensed Patents" ............................................... 2

        1. The "Integrated Licensed Products and Services" Are Not Licensed to the '154 Patent ................................................................................................ 2

        2. Trustwave's Opposition Attempts to Rewrite the Contract ............................. 4

    C. Trustwave's Warranty Claim is Flawed .................................................................... 5

    D. Trustwave Cannot Use Extrinsic Evidence to Interpret the 2012 Contract .................................................................................................................... 7

    E. Trustwave's Affirmative Defenses are Deficient ...................................................... 8

II. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Auto. Body Parts Ass'n v. Ford Global Techs., LLC*,
    930 F.3d 1314 (Fed. Cir. 2019) ............................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................10

*Cadence Pharm., Inc. v. Paddock Labs., Inc.*,
    C.A. No. 11-733-LPS, 2012 U.S. Dist. LEXIS 142585 (D. Del. Oct. 1, 2012) ...................10

*Dann v. Lincoln Nat'l Corp.*,
    274 F.R.D. 139 (E.D. Pa. 2011) ............................................................................................ 9

*Endo Pharm., Inc. v. Actavis, Inc.*,
    746 F.3d 1371 (Fed. Cir. 2014) ............................................................................................. 9

*Future Fibre Techs. Pty. Ltd. v. Optellios*, Inc., C.A. No. 09-346,
    2011 U.S. Dist. LEXIS 90548, at *19 (D. Del. Aug. 15, 2011) (Dazell, J.) ..................... 6, 7

*J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*,
    947 F. Supp. 2d 449 (D. Del. 2013) (Andrews, J.) ............................................................... 8

*Siemens Med. Sols. United States, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    647 F.3d 1373 (Fed. Cir. 2011) ............................................................................................. 6

*Sun Microsystems, Inc. v. Versata Enters.*,
    630 F. Supp. 2d 395 (D. Del. 2009) (Farnan, J.) .................................................................10

### STATE CASES

*Choupak v. Rivkin*, No. 7000 VCL,
    2015 WL 1589610, at *18 (Del. Ch. Apr. 6, 2015) .............................................................. 2

*City Investing Co. Liquid Tr. v. Cont'l Cas. Co.*,
    624 A.2d 1191, (Del. 1993) .................................................................................................. 2

*Genencor Int'l, Inc. v. Novo Nordisk A/S*,
    766 A.2d 8 (Del. 2000) ......................................................................................................... 6

### FEDERAL STATUTES

35 U.S.C. § 288 ...........................................................................................................................10

## FEDERAL RULES

Fed. R. Evid. 408 ................................................................................................................................8

Fed. R. Evid. 408(a) ............................................................................................................................8

Fed. R. Civ. P. 12(f) ............................................................................................................................9

Trustwave strains to create an argument that is: (1) absent from the face of the parties' Amended and Restated Patent License Agreement (the "2012 Contract"); and (2) is prohibited by the express terms of the 2012 Contract. Trustwave does not have a patent license to U.S. Patent No. 8,141,154 (the "'154 Patent").

Trustwave cannot rebut the plain meaning of the express terms in the 2012 Contract, which granted a license to certain "Licensed Patents" in Exhibit A. The '154 Patent does not meet the criteria for "Licensed Patents", as it does not ███████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████ *See* D.I. 36 (Countercl.) ¶¶ 23-25. Trustwave spends most of its Opposition citing extrinsic evidence, which is expressly prohibited by the 2012 Contract and Delaware law from varying the agreed-upon terms. D.I. 54, ("Opp'n"). Trustwave cannot retroactively rewrite the 2012 Contract almost ten years later to grant itself a license to the '154 Patent.

## I. TRUSTWAVE'S ALLEGATIONS ARE DEFICIENT

### A. Trustwave's Allegations Do Not Relate to the '154 Patent

Trustwave's deficient claims all stem from the 2012 Contract, which does not include the '154 Patent. Trustwave did not allege all elements necessary for a breach of contract counterclaim related to the '154 Patent since it is not listed in the 2012 Contract. *See* Opp'n at 8-9. At a minimum, Trustwave failed to plead the existence of a contract *concerning the '154 Patent*, or Finjan's breach of any obligation that such an agreement involving the '154 Patent imposes. *See* D.I. 36 (Countercl.) ¶¶ 32-38 (citing the 2012 Contract). Nor did Trustwave allege all elements necessary to give notice of affirmative defenses related to the '154 Patent for license, legal estoppel, or patent exhaustion, as it cited no facts related to the '154 Patent. *See id.*, at p. 23-28.

1

Trustwave's Counterclaim and related Affirmative Defenses fail.

Trustwave admits that the '154 Patent is not listed in the 2012 Contract. Opp'n at 3 ("the '154 Patent is not listed as a Licensed Patent"). The 2012 Contract, as the "sole source for gaining an understanding of intent," is "plain and clear on its face" that it does not include the '154 Patent (in Exhibit A). *See* Opp'n at 10 (citing *Choupak v. Rivkin*, No. 7000 VCL, 2015 WL 1589610, at *18 (Del. Ch. Apr. 6, 2015) (quoting *City Investing Co. Liquid Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993)). Trustwave does not respond to the Contract's straightforward restriction that defines "Licensed Patents" as only those listed in Exhibit A to the Contract (which does not include the '154 Patent):



- "'Licensed Patents' means ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" 2012 Contract (D.I. 36-1), at § 1.7 (emphasis in original);

- a transferee receives no rights to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See id*. § 2.4; and

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See id*. § 2.1.1 (emphasis added).

**B.      Trustwave Did Not Receive an "Unqualified Product License" Broader Than the License to the "Licensed Patents"**

**1.      The "Integrated Licensed Products and Services" Are Not Licensed to the '154 Patent**

Trustwave insists that it has an "express license to sell the Accused Products royalty free,

2

including under the '154 Patent." Opp'n, at 10. Trustwave relies heavily on its new theory. *See id.* at 3, 12-17. Trustwave's improper arguments can be summarized as follows:

- the contracting parties allegedly "introduced" an "entirely new class of products" as "Integrated Licensed Products and Services";

- this allegedly "entirely new class of products" is "broader" than the "Licensed Patents and Services";

- this allegedly "entirely new class of products" is "not limited by, or linked to, the Licensed Patents"; and

- "Trustwave's rights to use, modify, and exploit the special class of Integrated License[d] Products and Services is separate from the Licensed Patents".

Trustwave's fanciful theory contradicts the plain meaning of the 2012 Contract granting a license only to Exhibit A patents. 2012 Contract (D.I. 36-1), Ex. A. As part of that license, Finjan granted a license to only the Exhibit A patents for "Integrated Licensed Products and Services." 2012 Contract (D.I. 36-1) (expressed in §§ 1.5, 1.6, 1.7, 1.9, 1.11, 2.1.1 and 2.4). The use of the phrase "Integrated Licensed Products and Services" was simply a way for Trustwave to extend its ***existing*** license of the Exhibit A patents to products that integrated M86's legacy products ("Parent's Existing Products and Services"), nothing more. *See id.*, § 1.5 ███████████
███████████
███████████
███████ (emphasis added); *id.* § 1.11 ███████████
███████████
███████████
███████████

3

████████████████████████ (emphasis added).

These products enjoy the same limited license to Exhibit A patents as all other products in the 2012 Contract and not more. Trustwave's pleading admits that Finjan is correct that § 1.5's definition of "Integrated Licensed Products and Services" incorporates § 1.11, defeating its own argument. *See* D.I. 36 (Countercl.) ¶ 16. Trustwave never received any rights to the '154 Patent.

Trustwave's erroneous theory rests on the assumption that the parties would have agreed to license specific, enumerated patents listed in Exhibit A in § 1.7 (Licensed Patents), and then licensed *all other unidentified Finjan patents* merely because the parties amended the 2012 Contract to allow Trustwave to "integrate" legacy M86 products with Trustwave's products. *See* Opp'n, at 12-14. Trustwave argues points to the definition of "Integrated Licensed Products and Services" in § 1.5 and argues that the statement that this term ████████████████████ ████████████████████████████████████████████████████ *See* Opp'n at 13-14 (emphasis added). This contention is specious; to adopt Trustwave's interpretation would render the list of licensed patents in Exhibit A superfluous. Nowhere can Trustwave allege it received a license to the '154 Patent. Opp'n at 3 ("the '154 Patent is not listed as a Licensed Patent").

### 2. Trustwave's Opposition Attempts to Rewrite the Contract

Trustwave's theory falls flat on its face because the '154 Patent was published and issued before the 2012 Contract was signed. It is not related to any of the Exhibit A patents. If the parties had wanted to create a "special class of products" that included a license to the '154 Patent (or any other unrelated patent), it could have done so, just as it did under § 1.7 of the 2012 Contract and Exhibit A thereto.

Trustwave merely speculates as to the parties' intent in order to avoid the plain language of Exhibit A. Trustwave tries and fails to introduce "ambiguity" or "two interpretations" of the

4

2012 Contract, but the express language shows that no change ever eliminated the express limitation to "Licensed Patents" across many sections of the 2012 Contract. *See id.*; Ex. 4 (redlined changes between 2009 and 2012 versions of the Contract).

To support Trustwave's deficient argument, Trustwave selectively quotes § 2.1.1(c), ignoring §§ 2.1.1(a), (b) and (c), which all grant the same limited license to the "Licensed Patents." *See* Opp'n, at 11-13, 15-16 (disregarding the plain language of § 2.1.1 that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Trustwave's argument contradicts its own Counterclaim that the "Integrated Licensed Products and Services" in § 1.5 are a "subset" of the "Licensed Products and Services" in § 1.8. *See* D.I. 36 (Countercl.) ¶¶ 15-16.[1] The parties never broadened the license to include the '154 Patent, and Trustwave's argument fails.

### C. Trustwave's Warranty Claim is Flawed

Trustwave also alleges that § 4.1(c)'s warranty provision excuses any infringement of the '154 Patent or, by extension, any other Finjan patents that "dominate the Licensed Patents or are known to be required to practice the subject matter of the Licensed Patents." *See* Opp'n at 17-18 & n.10. This argument also fails for at least two reasons.

First, Trustwave's Counterclaim is insufficient as a matter of law because Trustwave has not alleged that any claims of the '154 Patent "dominate" or cover or otherwise relate (family-wise) to the subject matter of any patents in Contract Exhibit A. Courts have stated that the term "dominates" requires comparing the claim scope of the patents, which Trustwave has not done.

---

[1] Section 1.8 of the 2012 Contract similarly states: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (emphasis added).

5

*See*, *e.g.*, *Siemens Med. Sols. United States, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 647 F.3d 1373, 1374 (Fed. Cir. 2011).

In fact, it would be futile for Trustwave to amend its Counterclaim because the '154 Patent does not dominate or cover any licensed patents in Contract Exhibit A. The '154 Patent claims a method of protecting computers from malicious code by sending downloaded content to a remote security computer for analysis. *See, e.g.*, D.I. 1-1 at cl.1. The other licensed patents involve different subject matter, such as using security profiles to inspect content. The '154 Patent discloses and claims a new and fundamentally different topology for ensuring internet security at the client computer without compromising the integrity of the client computer. The '154 Patent enables this by (1) having the client computer forward downloaded content to a remote security computer; and (2) having the remote security computer (with a safer environment) analyze the content for maliciousness. None of the patents in Exhibit A to the 2012 Contract require or focus on this subject matter. The '154 Patent is not related to any of the Exhibit A patents, so this argument fails.

Second, even if there were a breach of § 4.1(c) (there is not), Trustwave provides no legal support for its belief that a breach would entitle Trustwave to a license to the '154 Patent, or any other Finjan patents. Trustwave identifies no Contract provision that grants rights to any patents in the event of such a violation, and the Counterclaim states no grounds for that relief. *See Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 14 (Del. 2000) ("Since paragraph 2.2(a) gives no affirmative rights in unpublished patents—indeed, does not even mention them—it would be unreasonable to grant an affirmative right to the omitted patent under paragraph 2.2(a) as a matter of fulfilling the parties' expectations."); *Future Fibre Techs. Pty. Ltd. v. Optellios*, Inc., C.A. No. 09-346, 2011 U.S. Dist. LEXIS 90548, at *19 (D. Del. Aug. 15, 2011) (Dazell, J.)

(denying motion to bar patent claims that issued after settlement agreement).

Critically, while Trustwave claims that Finjan knew the scope of the '154 Patent's claims by the effective date of the Contract (*see* Opp'n at 11), Trustwave does not respond to Finjan's arguments that Trustwave also knew (or should have known) about the '154 Patent and its published claims and could have asked to include it (or other Finjan patents) in the Contract, but chose not to. At no point—even after Singtel acquired Trustwave—did it seek to modify the Contract to include the '154 Patent or any others.

**D.  Trustwave Cannot Use Extrinsic Evidence to Interpret the 2012 Contract**

As stated above, the 2012 Contract prohibits using extrinsic evidence. Trustwave's Opposition does not address § 6.5 of the 2012 Contract, the merger clause that expressly states the Contract ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 2012 Contract (D.I. 36-1), § 6.5. After-arising extrinsic statements in wholly different contexts do not modify the scope of patents in the Contract or cede any rights to Trustwave.

Trustwave's cited extrinsic evidence cannot vary Delaware law and the plain meaning expressed in §§ 1.7, 1.9, and 2.1.1 (and other sections) that govern the 2012 Contract. "[E]xtrinsic evidence is not to be used to interpret contract language where that language is plain and clear on its face." *See Future Fibre Techs.*, 2011 U.S. Dist. LEXIS 90548, at *11 (quoting *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 289 (Del. 2001) (internal quotation marks omitted)).

Trustwave's reliance on a licensing negotiation e-mail (Exhibit 5 D.I. 36-1) is wholly misplaced. Neither Finjan nor Trustwave believed that Trustwave possessed a license to all of Finjan's cybersecurity patents. First, the communication is marked ▮▮▮▮▮▮▮▮▮

7

███████████████████ and is therefore not admissible "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). Second, the ███████████ does not prove that the '154 Patent is part of the Contract, or that Trustwave received a "product" license to all Finjan patents based solely on ██████████████████████ These allegations fail as a matter of law because Trustwave has not alleged a written and executed agreement modifying the Contract's terms or a waiver of the Contract's integration clause. *See J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 454-55 (D. Del. 2013) (Andrews, J.) (upholding integration clause that required changes in writing).

Next, Trustwave's arguments about Finjan's extrinsic, non-binding statements in other proceedings repeat portions of the Counterclaim without addressing Finjan's arguments, simply dismissing them as "no explanation." Opp'n at 20. Trustwave is wrong. Finjan explained in its opening brief why neither set of statements overrides the plain language of the Contract and gives Trustwave any rights to the '154 Patent. *See* D.I. 48 at 14-16. The first quoted statement comes from Finjan's damages expert in a different, earlier case. At most, that testimony refers to a separate, unidentified agreement and generally states that Finjan has granted portfolio licenses before. Finjan's damages expert, who was neither retained nor authorized to rewrite Finjan's contracts, did not state that Trustwave received a license to the '154 Patent, or specifically reference the Contract; nor does Trustwave explain how such an after-arising statement can alter the terms of the Contract. The second quoted statements are from Patent Owner Preliminary Responses in IPRs and indicate that Finjan has licensed certain patents to multiple companies, to address secondary considerations of non-obviousness. Those statements arose years after the Contract. Trustwave offers no legal rationale for how such statements can modify the Contract.

### E.  Trustwave's Affirmative Defenses are Deficient

For the same reasons that its Counterclaim fails, Trustwave's Eleventh, Twelfth, and

8

Thirteenth Affirmative Defenses are also fatally flawed. The disputed Affirmative Defenses rely on the same allegations as the Counterclaim, and fail to give notice of the facts in support of their separate affirmative defenses. Trustwave's Eleventh Affirmative defense of "license" is almost identical to its Counterclaim and identifies no specific license to the '154 Patent. *Compare* D.I. 36 (Ans.) at 23-24, *with id.* (Countercl.) ¶¶ 12-18. The Twelfth Affirmative Defense of "legal estoppel" also mirrors the license allegations, citing the same Contract provisions, which fail to allege the elements of legal estoppel related specifically to the '154 Patent, as required. *See Endo Pharm., Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1378 (Fed. Cir. 2014) (limiting legal estoppel to where one of the "asserted patents is a continuation of any of the licensed patents"); D.I. 36 (Ans.) at 25-26. Finally, the Thirteenth Affirmative Defense of "patent exhaustion" also relies on purported licenses to the '154 Patent, without identifying any such licenses for the '154 Patent or basis for asserting that Finjan's other licenses include that patent. *See* D.I. 36 (Ans.) at 28. Contrary to Trustwave's argument that this defense "describes extensive licensing of the '154 patent" (Opp'n at 7 n.7), Trustwave did not identify any authorized sales involving the '154 Patent, failing to state facts to support this defense. *See Auto. Body Parts Ass'n v. Ford Global Techs., LLC*, 930 F.3d 1314, 1322 (Fed. Cir. 2019) (exhaustion requires "[a]n authorized sale").

Trustwave's arguments about the pleading standards for affirmative defenses are also misplaced. Rule 12(f) plainly allows the Court to "strike from a pleading an insufficient defense." Moreover, Trustwave acknowledges that Third Circuit district courts are split on applying the heightened *Twombly/Iqbal* standard of "plausibility" to affirmative defenses. *See Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 145 n.6 (E.D. Pa. 2011) ("A majority of courts have held that *Twombly*'s plausibility standard does apply to affirmative defenses."). In this case, the same considerations from *Twombly* about preventing unnecessary discovery favor applying the

heightened plausibility standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Trustwave's cases on this point are also distinguishable. For example, *Cadence*, which Trustwave cites repeatedly, involved affirmative defenses for patent misuse and disclaimer under 35 U.S.C. § 288, and did not address a contract claim alleging rights beyond the terms of the contract itself. *See Cadence Pharm., Inc. v. Paddock Labs., Inc.*, C.A. No. 11-733-LPS, 2012 U.S. Dist. LEXIS 142585 (D. Del. Oct. 1, 2012).

Trustwave's own interpretation of the pleading standard renders its Affirmative Defenses legally insufficient because they rely on the same unsupported theories in its Counterclaim that purport to include the '154 Patent. Indeed, Trustwave's Eleventh and Twelfth Affirmative Defenses repeat nearly verbatim the assertions of the Counterclaim. *See* D.I. 36 (Ans.) at 23-28. Trustwave does not explain why, if its Counterclaim is deficient under *Twombly/Iqbal*, those defenses could pass muster despite repeating the *same* allegations if the Counterclaim is deficient. Contrary to Trustwave's contentions, courts have stricken affirmative defenses based on a license theory that contains "bare bones conclusory allegations." *See Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395, 411 (D. Del. 2009) (Farnan, J.) (striking defense of implied license due to failure to allege consideration and acquiescence).

## II.  CONCLUSION

This matter involves the '154 Patent, which is not related to any Licensed Patent. Trustwave's allegations regarding the 2012 Contract that does not list the '154 Patent as a Licensed Patent should be dismissed. Finjan respectfully requests that the Court dismiss Trustwave's Counterclaim for breach of contract with prejudice and strike Trustwave's Eleventh, Twelfth, and Thirteenth Affirmative Defenses.

          Respectfully submitted,

          */s/ Karen E. Keller*
          Karen E. Keller (No. 4489)
OF COUNSEL:     Jeff Castellano (No. 4837)
Bijal Vakil          SHAW KELLER LLP
WHITE & CASE LLP    I.M. Pei Building
3000 El Camino Real   1105 North Market Street, 12th Floor
2 Palo Alto Square, Suite 900   Wilmington, DE 19801
Palo Alto, CA 94306   (302) 298-0700
(650) 213-0300      kkeller@shawkeller.com
          jcastellano@shawkeller.com
          *Attorneys for Plaintiff*

Dated: January 29, 2021

# **CERTIFICATE OF SERVICE**

        I, Karen E. Keller, hereby certify that on January 29, 2021, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Jack B. Blumenfeld<br>Alexandra M. Cumings<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jbbefiling@mnat.com<br>acumings@mnat.com | John S. Letchinger<br>BAKER & HOSTETLER LLP<br>191 North Wacker Drive, Suite 3100<br>Chicago, IL 60606-1901<br>(312) 416-6200<br>jletchinger@bakerlaw.com<br><br>Jared A. Brandyberry<br>BAKER & HOSTETLER LLP<br>1801 California Street, Suite 4400<br>Denver, CO 80202<br>(303) 764-4072<br>jbrandyberry@bakerlaw.com |

        */s/ Karen E. Keller*
        Karen E. Keller (No. 4489)
        Jeff Castellano (No. 4837)
        SHAW KELLER LLP
        I.M. Pei Building
        1105 North Market Street, 12th Floor
        Wilmington, DE 19801
        (302) 298-0700
        kkeller@shawkeller.com
        jcastellano@shawkeller.com
        *Attorneys for Plaintiff*