IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| FINJAN LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>TRUSTWAVE HOLDINGS, INC., and<br>SINGAPORE TELECOMMUNICATIONS<br>LIMITED,<br><br>        Defendants. | Redacted - Public Version<br><br>C.A. No. 20-371-LPS |

## JOINT STATUS REPORT

<div style="display: flex;">

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff Finjan LLC*

OF COUNSEL:
Jeremy T. Elman
Bijal Vakil
ALLEN & OVERY LLP
530 Lytton Ave, 2nd Floor
Palo Alto, CA 94301
(650) 388-1650

Dated: December 9, 2021

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
acumings@morrisnichols.com
*Attorneys for Defendant Trustwave
Holdings, Inc.*

OF COUNSEL:
John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive,
Suite 3100
Chicago, IL 60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
(303) 764-4072

</div>

A.      **Finjan's Position**

Finjan's review of Trustwave's "Phase 1" non-technical document production confirms there is a clear and direct relationship between the Accused Products and the patent-in-suit, U.S. Patent No. 8,141,154. Ex. 1, Declaration of Jeremy T. Elman ("Elman Decl.") ¶ 2. Accordingly, Finjan reports in response to Questions 1–3 from this Court (D.I. 123) that: (i) the limited non-technical information recently produced by Trustwave further substantiates Finjan's allegations that fourteen of the fifteen Accused Products contain the "accused functionality" at issue; (ii) Trustwave remains unwilling to produce any sales data; and (iii) Finjan thus respectfully requests that the Court now order "Phase 2," a complete technical and financial production in compliance with Paragraph 7(b) of the Court's Scheduling Order (D.I. 83).[1]

   1.   **Trustwave's Production Demonstrates that the Accused Products Are Properly Accused**

Trustwave provides two purported bases on which it asks the Court to deny the requested discovery for core technical documents and sales data under Paragraph 7(b): (i) that Finjan has failed to justify its accusation of the disputed products and (ii) that the disputed products are not "specific offerings." The non-technical documents that Trustwave provided in Phase 1 demonstrate that, with the exception of two Accused Products—Information Security Risk Assessment, which Finjan will withdraw, and PCI Compliance, which Finjan has narrowed to the "Security Plus" product contained within it—both contentions are meritless. Elman Decl. ¶ 3.

---

[1] As set forth in Finjan's Letter Motion to Compel (D.I. 111) and the parties' November 19, 2021 Joint Status Report (the "November Joint Status Report"). For the sake of brevity, Finjan will not repeat those arguments here. Capitalized terms not defined herein shall have the meanings ascribed to them in that Letter Motion to Compel.

As set forth in Finjan's 49-page Infringement Contentions, Finjan accused Trustwave of making, using and selling products and services featuring the accused functionality that actively protects email and web content. One way Trustwave does so is through its software engine for email and web filtering (the "Security Engine"),[2] which it refers to by various names including, *inter alia*, "Blended Threat Module" (in the infringement contentions), "Global Threat Database" or "threat analysis engine." Trustwave admits that Finjan properly accused the Security Engine (*i.e.*, as the "Blended Threat Module") in four of the Accused Products (Secure Email Gateway, MailMarshal, Secure Web Gateway, and WebMarshal), but refuses to agree to the same regarding the other Accused Products. Trustwave has no basis for this differentiation.

To illustrate that the accused functionality is in all of the Accused Products, Finjan created an exemplary chart (at Trustwave's request[3]) to show how Trustwave's limited, non-technical document production refers to the Software Engine documented in all of the remaining disputed products:

| Disputed Accused Product[4] | Exemplary Trustwave Production Document |
|---|---|
| Endpoint Protection Suite (EPS) | [redacted] |

---

[2] As Trustwave does in Note 7, Finjan's reference to the accused real-time malware analysis (or similar words) in Trustwave's documentation as the "Security Engine" is an "oversimplification of the technology at issue" solely for purposes of this Joint Status Report and includes "active protection" since that is "real-time" analysis. It is not a complete recitation of Finjan's infringement allegations, which are contained in its 49-page infringement contentions. Trustwave's attempt to argue infringement and/or claim construction at this preliminary stage should be rejected.

[3] On the parties' December 8, 2021 meet and confer call to attempt to resolve this dispute, Trustwave's counsel requested that Finjan provide detailed citations to Trustwave's production showing the Software Engine, which Finjan diligently created and provided highlighted citations. Elman Decl. ¶ 4. Trustwave still refuses to produce documents despite this evidence.

[4] The cited pages are provided in full in Exhibit 2.

Case 1:20-cv-00371-TBS Document 130 Filed 12/17/21 Page 3 of 15 PageID #: 4217

| | |
|---|---|
| Fusion | ■ |
| Intrusion Detection and Prevention (IDP) | ■ |
| Managed Detection and Response (MDR) | ■ |
| Managed Unified Threat Management (UTM) | ■ |
| Security Plus | ■ |
| Security Information and Event Management (SIEM) | ■ |
| Spider Labs (SL) | ■ |
| Threat Detection and Response (TDR) | ■ |
| Web Application Firewall (WAF) | ■ |

Trustwave concedes that the Security Engine, *i.e.*, the accused functionality providing active protection shown above and in Exhibit 2, "interface[s] with," "reference[s]" and/or "plug[s] into" the Accused Products to perform the email and web filtering that Finjan alleges infringes the '154 Patent. *See* D.I. 119 (Oct. 26 Tr.) at 7:19–9:15, 13:3–24, 14:3–6, 15:10–17, 27:22–25. For example, as shown in one exemplary graphic below, Trustwave's SpiderLabs and Fusion products directly incorporate and depend on the filtering technology to actively protect content that Trustwave concedes is infringing, as shown in the below graphics.



TWH0061936, TWH00055000.

Nor does Trustwave dispute that its salespeople tell customers that its email and web filtering is part of an ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ that encompass the disputed

4

products.[5]  That is shown in the above graphics, as well as hundreds of similar sales and marketing documents.  It is clear that Finjan has been hamstrung by Trustwave's stonewalling. Trustwave should not be rewarded, and Finjan should not be penalized or denied fair discovery—in accordance with this Court's Scheduling Order (D.I. 83)—especially when Phase 1 discovery further indicates that the remaining fourteen Accused Products are properly accused.

Should Trustwave produce core technical documents that definitively establish that some of the Accused Products should be withdrawn, Finjan will promptly and appropriately further narrow its infringement contentions, which is what Finjan has understood to be one of the main purposes for discovery.  At this stage, the non-technical documents that Trustwave has provided show that it informs its customers that the Accused Products have a clear and direct relationship to the patented filtering technology for actively protecting content.  Elman Decl. ¶2.  That is sufficient to mandate discovery as to each remaining Accused Product.  Since there is no justification to withhold relevant production of technical information, Finjan requests that Trustwave produce this information promptly for the remaining products-at-issue.

2.  **Trustwave Lacks A Proper Basis to Withhold Sales Data**

Trustwave's asserted bases for its refusal to provide any sales data for the disputed products—its belief that they have "no relation to the patent-in-suit" and that such discovery "would place tremendous burden on Trustwave to pull sales data from multiple systems"—fall flat.  D.I. 122 (Nov. Joint Status Rpt.) at 5.  As set forth above, Finjan has shown that fourteen of the fifteen Accused Products cite documentation for the Software Engine.  And as Finjan detailed

---

[5]  The Fusion graphic set forth in TWH00055000 demonstrates Finjan's willingness to properly limit its accusations.  For example, Finjan did not accuse "DbProtect" (database protection) or "Security Testing Services" (e.g., penetration testing) since, based on current information, they do not appear to interface with, plug into or depend on infringing technology.

5

in the November Joint Status Report, previous inspections of Trustwave's accounting systems have each taken less than a day, the information in question is compiled for use in public-facing reports, and it is commonplace to pull data from multiple sources. Moreover, Trustwave is obligated to do so pursuant to Paragraph 7(b) of the Scheduling Order. D.I. 83.

### 3. The Court Should Compel a Further Production From Trustwave

Trustwave should not be allowed to avoid its discovery obligations by turning protections against overly burdensome discovery into a litigation tool. What Finjan has sought and continues to seek here is not atypical or overly burdensome—it is not only contemplated but required by this Court's Scheduling Order. D.I. 83. Trustwave has been fully aware of Finjan's infringement claim for years and was obligated to put litigation holds on all relevant information since at least the date the Complaint was filed. As such, gathering the requested information has presumably already been done. Producing that information should be routine (*e.g.*, bates stamping documents and designating them for protection under the Protective Order) and not overly burdensome.

Unsurprisingly given its past stonewalling tactics, Trustwave now requests further briefing even though Finjan has fully complied with the letter and spirit of the Court's phased discovery order. D.I. 119 at 33:13–34:15; D.I. 123. Trustwave's delays are yet another transparent attempt to improperly enhance the cost of litigation and burden the Court with discovery disputes that its Scheduling Order was designed to avoid. At this juncture, Trustwave should not be allowed to sidestep the Court's order with impunity and instead be ordered to produce responsive documents and communications required by Paragraph 7(b).

In sum, and in response to the Court's third question, the Court should compel a complete production of technical and financial information pursuant to Paragraph 7(b), as it suggested it might do after Phase I was complete. Finjan seeks to avoid further discovery disputes and does

6

not want to continue to expend legal fees to force Trustwave to comply with basic discovery obligations. Trustwave is required to produce that information for each Accused Product prior to the close of fact discovery on June 15, 2022 in order to narrow the issues for the Court and jury. Absent that core technical information, Finjan cannot, and should not, be expected to narrow the issues any further than it already has. Elman Decl. ¶ 4.

## B. Trustwave's Position

Trustwave should not be unduly burdened to produce further technical documents and financial data based on the evidence presented by Finjan. Finjan's position rests on inaccuracies in how Finjan is classifying its patented technology and the operation of Trustwave's products. Finjan now claims that any ***detection*** technology provided by Trustwave is in play. But the first column of the asserted patented disparages such technology and calling it known technology and explains that instead the patented technology focuses on "proactive anti-virus protection" that "can block viruses that have not been previously detected and which do not have a signature on record." '154 Patent at 1:13-64. In conjunction with the unsupported expansion of the technology at issue, Finjan is now alleging that all Trustwave's products and services use a "Security Engine" based on the Trustwave Secure Email Gateway. Nothing is cited to support this claim and it is not accurate. Unfortunately, further Court intervention is necessary and Trustwave requests an abbreviated briefing schedule to address Finjan inaccuracies in detail for the Court.

Pursuant to this Court's order (D.I. 123) Trustwave completed its promised document production on November 24, 2021. Next, under the Court's Order, the "parties shall submit a joint status report by December [9] apprising the Court of the status of their dispute, including (1) whether any issues have been narrowed; (2) whether and by when Trustwave will produce sales data for those accused products and services that remain; and (3) whether the parties need any more assistance from the Court."[6] Trustwave does not believe that Finjan has complied with its obligations under part (1) of the Court's order. Finjan's conclusory arguments indicate that Finjan failed to conduct an adequate review of Trustwave's production.

---

[6] The deadline for the joint status report was extended from December 6, 2021 to December 9, 2021 by stipulation. See D.I. 126.

Initially Finjan contacted Trustwave and simply asserted that its review of Trustwave's production confirmed that Finjan had a good faith belief to continue to accuse the disputed products. Finjan did not provide anything other than a list of document ranges. Finjan provided no analysis whatsoever that relates to the subject of this lawsuit—i.e., the patented technology—and no allegedly supporting material in the documents was cited or identified in any manner. Finjan's position was that it had self-certified its good faith belief and was going to ask the Court to burden Trustwave with further technical and financial discovery on the disputed products.

During the parties' meet and confer, Trustwave explained that what had been provided by Finjan thus far did not make if feasible for Trustwave, or the Court if intervention was necessary, to evaluate Finjan's position. In response, Finjan revised its position and now includes phrases that are allegedly included in certain documents. But this additional information was provided, for the very first time, at 11:30pm ET yesterday. Of course, Trustwave will review and investigate what Finjan has provided but there is not time to do so before submission of this report. Thus, as outlined below Trustwave is proposing an abbreviated briefing schedule to allow the parties to substantiate their positions in advance of further court intervention.

Trustwave's initial reaction is that there are three errors contained in Finjan's position. First, Finjan appears to now argue that the asserted patent covers any cybersecurity **detection** technology, rather than software that provides some type of **active protection** (e.g., blocking, filtering).[7] This new argument does not conform with what is disclosed in the asserted patent and

---

[7] This dichotomy between detection and active protection is an oversimplification of the technology at issue. This dichotomy is only being used at this preliminary stage as a rough classification of technology in an effort to resolve this dispute over what Trustwave believes is an extremely overbroad and improper list of accused products. As Trustwave will explain as a latter stage, Trustwave's view is that Finjan's asserted patent covers a very specific protection functionality employed through certain architecture (i.e., gateway, client, security computer) that is not present in Trustwave's products. But these specific claim construction and non-infringement arguments, which were affirmed by the Federal Circuit, are not the basis of Trustwave's position
9

is a significant expansion on what is alleged in Finjan's complaint and infringement contentions served to date and what was previously Finjan's position in this dispute (i.e., products with web or email filtering capabilities).

Second, Finjan appears to have taken the cited phrases out of context and to have created this concept of a "Trustwave Security Engine" out of thin air. The cited phrases in Finjan's chart do not use this "Security Engine" terminology. Instead of providing any explanation for how the cited phrases allegedly implicate Finjan's patent, Finjan just baldly claims everything is the same functionality. This is not accurate and Trustwave proposes to investigate and explain the inaccuracies in its proposed brief.

Third, Finjan alleges that if an undisputed accused product (e.g., Trustwave's Secure Email Gateway) provides data or reports to a disputed accused product or service (e.g., Trustwave's Fusion platform), that the data flow, regardless of whether the disputed product or service independently contains the accused functionality, justifies alleging infringement against the disputed product or service. Finjan has provided no legal justification or explanation related to the asserted patent's functionality for this argument. Trustwave has readily admitted that its Secure Email Gateway can interface with the Fusion platform. For example, Trustwave's Fusion platform compiles data from security tools, whether third party or Trustwave tools, for analysis by Trustwave personnel. See TWH00055000 cited above in Finjan's position. Some of the personnel who review the compiled data are a part of Trustwave's research team (i.e., SpiderLabs) and based on their review of the data they advise Trustwave clients and enhance Trustwave products (e.g., provide new rules sets or security profiles based on their research). See TWH0061936 cited above

---

that the disputed products and services have no place in this action. Finjan is incorrect to allege that Trustwave has conceded anything with respect to Finjan's positions other than in an effort to resolve the present dispute over Finjan's inclusion of the disputed products and services on its Identification of Accused Products.

in Finjan's position. Nothing in what Finjan has presented shows that Trustwave's Fusion platform or Trustwave's SpiderLabs researchers perform the accused functionality. Nor does Finjan explain how receiving a data flow from Trustwave Secure Email Gateway somehow means that a disputed product or service infringes the asserted claims of Finjan's asserted patent.

At this stage, it seems clear that further Court intervention will be necessary. Accordingly, Trustwave proposes that the parties brief a motion to compel and schedule a second hearing at the Court's convenience. This briefing will allow Finjan to attempt to substantiate its claims and will allow Trustwave to respond to Finjan's non-conclusory allegations.[8] Trustwave proposes the following briefing schedule:

- Finjan Files its Motion to Compel and Opening Brief (Limited to 10 pages): December 16, 2021

- Trustwave Files its Answering Brief (Limited to 10 pages): December 23, 2021

- Hearing on Motion to Compel: January \_\_\_\_, 2022

---

[8] It is hard to understand how Trustwave is somehow "stonewalling" when it received the Finjan's citations for the very first time less than 24 hours ago (in fact, Trustwave received the highlighted exhibits less than an hour before the deadline for this submission) and Trustwave is asking for briefing that will be completed in two weeks.

11

| | |
|---|---|
| */s/ Jeff Castellano* | */s/ Jack B. Blumenfeld* |
| Karen E. Keller (No. 4489) | Jack B. Blumenfeld (#1014) |
| Jeff Castellano (No. 4837) | Alexandra M. Cumings (#6146) |
| SHAW KELLER LLP | MORRIS, NICHOLS, ARSHT |
| I.M. Pei Building | & TUNNELL LLP |
| 1105 North Market Street, 12th Floor | 1201 North Market Street |
| Wilmington, DE 19801 | P.O. Box 1347 |
| (302) 298-0700 | Wilmington, DE 19899-1347 |
| kkeller@shawkeller.com | (302) 658-9200 |
| jcastellano@shawkeller.com | jblumenfeld@morrisnichols.com |
| *Attorneys for Plaintiff Finjan LLC* | acumings@morrisnichols.com |
| | *Attorneys for Defendant* |
| OF COUNSEL: | *Trustwave Holdings, Inc.* |
| Jeremy T. Elman | |
| Bijal Vakil | OF COUNSEL: |
| ALLEN & OVERY LLP | John S. Letchinger |
| 530 Lytton Ave, 2nd Floor | BAKER & HOSTETLER LLP |
| Palo Alto, CA 94301 | 191 North Wacker Drive, |
| (650) 388-1650 | Suite 3100 |
| | Chicago, IL 60606-1901 |
| | (312) 416-6200 |
| | |
| | Jared A. Brandyberry |
| | BAKER & HOSTETLER LLP |
| | 1801 California Street, Suite 4400 |
| Dated: December 9, 2021 | Denver, CO 80202 |
| | (303) 764-4072 |

# CERTIFICATE OF SERVICE

I, Jeff Castellano, hereby certify that on December 9, 2021, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrinichols.com
acumings@morrisnichols.com

John S. Letchinger
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL 60606-1901
(312) 416-6200
jletchinger@bakerlaw.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
(303) 764-4072
jbrandyberry@bakerlaw.com

*/s/ Jeff Castellano*
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff*

# EXHIBITS 1-2

# Redacted in their Entirety